| Relator, Stephen J. Schmidt, seeks our review of the trial court’s denial of his motion to stay the court litigation pending arbitration.[1] After our de novo review of the ruling, we conclude that the trial court erred as a matter of law in denying the motion to stay in order that the matter could be submitted to binding arbitration. Accordingly, we grant a stay of these proceedings pending arbitration and remand the case to the district court.
I
On July 27, 2007, in a commercial transaction in New Orleans, Jourdan River Estates, LLC, borrowed $4.42 million from Regions Bank. In addition to the security of a mortgage or deed of trust on real estate situated in Mississippi, the bank also obtain the personal written guaranties *1286 of Mr. Schmidt and of Earl Weber, Jr. Mr. Schmidt and Mr. Weber are members of the limited liability company. The bank identified the promissory note and the Commercial Guaranty with its Loan No. 04100169109002, which number appeared on both documents.
| ⅞ Jour dan River Estates, LLC, filed Chapter 11 bankruptcy, and the bank instituted suit against the two guarantors to collect the debt. In its petition the bank identifies the promissory note as evidence of the indebtedness owed by the company, which indebtedness, the petition further explains, was guaranteed by Mr. Schmidt in the Commercial Guaranty. The promissory note contains an agreement to submit any dispute, claim or controversy to binding arbitration; the Commercial Guaranty does not contain such an agreement.
Initially, Mr. Schmidt excepted on the grounds of prematurity. See La. C.C.P. art. 926 A(l). At that time he also sought a stay so that he could proceed to arbitration. The trial court overruled the exception and the motion. A judgment denying an exception of prematurity is an interlocutory judgment. See La. C.C.P. art. 1841 (“A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.”); see also Touro Infirmary v. Sizeler Architects, 06-0349 (La.App. 4 Cir. 12/20/06), 948 So.2d 261. Mr. Schmidt did not seek supervisory relief from that judgment. See La. C.C.P. arts. 1914 D and 2201. The failure to seek supervisory review is, however, of no moment. An interlocutory judgment may be reconsidered or revised upon proper motion at any time until the rendition of a final judgment. See Magallanes v. Norfolk Southern Railway Co., 09-0605, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 985, 988. Thus, when Mr. Schmidt seasonably re-urged his motion for a stay, nothing precluded the trial court from reconsidering its earlier ruling. When the trial court again denied the motion, Mr. Schmidt sought supervisory relief.
| ¡¡Mr. Schmidt argues that because Regions seeks to enforce a guaranty agreement in order to collect on a debt evidenced by the promissory note, which is identified with it and relied upon by the bank to collect the debt against Mr. Schmidt, the promissory note is inextricably tied to the dispute and claim, and therefore he is entitled to avail himself of its arbitration provision. We agree.
II
The determination as to whether to stay proceedings or to compel arbitration is a question of law. Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 6 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762.
Regions is opposed to proceeding before an arbitrator. The bank insists that Mr. Schmidt was not a party to the promissory note and did not sign it. The issue is whether Schmidt is entitled to assert the right to arbitration in the absence of his individual signature on the document—the promissory note—that has the arbitration clause. Regions, by instituting suit against Mr. Schmidt, may well have waived its right to compel arbitration. See Simpson v. Pep Boys-Manny, Moe, & Jack, Inc., 03-0358, p. 7 (La.App. 4 Cir. 4/10/03), 847 So.2d 617, 623. But its waiver cannot control Mr. Schmidt’s entitlement.
Arbitration is favored under both the Louisiana and the United States jurisprudence. Aguillard v. Auction Management Corp., 04-2804, pp. 6-8 (La.6/29/05), 908 So.2d 1,7-8. In Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662, p. 8 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 387, we stated:
*1287 Louisiana courts have recognized a strong presumption in favor of arbitration. Moore v. Automotive Protection Corp., 97-0623, p. 2 (La.App. 4 Cir. 5/21/97), 695 So.2d 550, 551 .... Both the federal and state jurisprudence hold that any doubt |tas to whether a controversy is arbitrable should be resolved in favor of arbitration.
The Louisiana Supreme Court in International River Center v. Johns-Manville Sales Corp., 02-3060, p. 6 (La.12/3/03), 861 So.2d 139, 143, acknowledged that the arbitration statute requires that the lower court shall order arbitration “once [the court] finds that there has been an agreement to arbitrate and a failure to comply therewith” and the waiver is reserved for the arbitrator to decide. See also Touro Infirmary v. Sizeler Architects, 04-2210 at p. 11, 947 So.2d at 746.
The Louisiana statutory provisions for arbitration include La. R.S. 9:4201, which states:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La. R.S. 9:4202 provides:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance until the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration, (emphasis added)
| sThe Louisiana statutory provisions echo the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and Louisiana courts look to federal law in interpreting the Louisiana arbitration statutes. Firmin v. Garber, 353 So.2d 975, 977 (La.1977); Lakeland Anesthesia, Inc. v. CIGNA Healthcare of La. Inc., 01-1059, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 698.
The arbitration clause in the Regions promissory note at issue provides:
ARBITRATION. Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint or class in nature, arising from this Note or otherwise, including without limitation contract or tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either part. No act to take or dispose of or foreclose upon any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining in-junctive relief or a temporary restraining order; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agree- *1288 merit relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right as the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which may otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the {^construction, interpretation, and enforcement of this arbitration provision.[2] (emphasis added)
Our review of the Regions arbitration clause indicates that its scope includes the dispute between the parties. We stated in Saavedra, supra, 08-1239 at p. 7, 8 So.3d at 763:
“The threshold inquiry a court must decide is whether the parties agreed to arbitrate their dispute, which is a twofold inquiry: (1) whether there is a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of that agreement ... [citation omitted] The question of whether the parties have submitted a particular dispute to arbitration-arbitrability-is generally one for the court to decide .... [citation omitted] Under the FAA, any doubt concerning the scope of which disputes are arbitrable should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).”
*1289 In Saavedra, we found that Mr. Saavedra’s fraud claim was directed to the purchase agreement as a whole, rather than attacking the arbitration provision |7itself. We found that his claims, including his claim for fraud in the inducement, must be arbitrated. Saavedra, supra, 08-1239 at pp. 8-9, 8 So.3d at 765.
Aguillard, supra, 04-2804 at p. 7, 908 So.2d at 7, interprets La. R.S. 9:4202, stating “that if any suit or proceedings are brought upon any issue referable to arbitration, the court in which suit is pending shall stay the trial of the action pending arbitration.” (emphasis added). Further, the Court stated:
“[W]e hold that a presumption of arbi-trability does exist. Due to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law as seen through a comparison of La.Rev.Stat. §§ 9:4201 and 9:4204 and 9 U.S.C. §§ 2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions. We, therefore, adopt the United States Supreme Court’s interpretation of the federal arbitration law.
Accordingly, even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.
Aguillard, supra, 04-2804 at p. 18, 908 So.2d at 24-25.
In Bartley, Inc. v. Jefferson Parish School BdL, 302 So.2d 280, 283 (La.1974) the Louisiana Supreme Court stated:
One of the basic reasons for the existence of arbitration agreements is to allow the parties to achieve speedy settlement of their differences out of court ... This purpose would be thwarted if, before being required to perform under the arbitration agreement, parties were permitted to litigate in order to secure an initial judicial determination (preliminarily to arbitration) that procedural formalities of the agreement had been complied with.
| sUnquestionably the promissory note and guaranty were standard forms, printed, with small print. The important issue is the consent of the parties to all the printed terms of the contract, and whether the contract unduly burdens the party with the weaker bargaining position. The Aguillard court would consider also the “limitations and hardships placed on the parties under the terms of the arbitration clause.” Hoffman, supra, 05-1491 at p. 10, 936 So.2d at 859.
IV
The Saavedra court noted that, while the only parties to the purchase agreement in that case were Mr. Saave-dra [3] and Mr. Wallace, the Wallace defendants contended that
given the relatedness of the claims collectively asserted against the defendants the arbitration agreement can be invoked by all the defendants, including the non-signatory defendants. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir.2000).
*1290 Pursuant to the theory of equitable estop-pel[4] which would permit arbitration, the Grigson court stated that equitable estop-pel doctrine has allowed a non-signatory to a contract with an arbitration clause to compel arbitration under an equitable es-toppel theory, including when the action is intertwined with, and dependent upon, that contract. Grigson, supra, 210 F.3d at 528. This court in Hurley v. Fox, 520 So.2d 467 (La.App. 4th Cir.1988) held that R.S. 9:4201 does not require the written agreement providing for arbitration to be signed by both parties to the agreement. “Absent a signature or a signing of an agreement, the effect or validity |9of the agreement may be shown by the actions and conduct of the parties.” Hurley, supra, 520 So.2d at 469.
Regions in its brief points to Grabert v. Greco, 95-1781 (LaApp. 4 Cir. 2/29/96), 670 So.2d 571, 572-73, denying arbitration when the appellant Greco did not sign a document called “Letter Agreement” con-fected by corporate officers which was thereafter approved by a corporate board of directors. When the corporation did not act in accordance with that Agreement, Grabert sought to enforce the arbitration clause in the Agreement. The trial court denied his petition to enforce, stating that he was not a proper party to enforce the arbitration clause. The text of the Agreement reveals that the proposed employment contract never came into existence; hence no arbitration agreement became operative. We affirmed the trial court’s denial of arbitration. However, the instant case is distinguishable on its facts from Greco.
The incorporation of an arbitration clause by reference to another written contract is a suitable method of evidencing the parties’ intent to arbitrate as long as the arbitration clause in the contract that is referred to has “a reasonably clear and ascertainable meaning.” Dufrene v. HBOS Manufacturing, LP, 03-2201, p. 5 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1211; Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So.2d 11,13 (La.App. 5th Cir.1993). In the instant case, the Regions promissory note and commercial guaranty bear the same date of signing and the same loan number. Regions seeks to collect the debt evidenced by the promissory note from Mr. Schmidt. We find the promissory note and the | l0Commercial Guaranty sufficiently intertwined to compel arbitration at the election of Mr. Schmidt.
V
The U.S. Constitution, Article VI, Clause 2 (the Supremacy Clause) states:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
*1291 In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the U.S. Supreme Court stated:
The basic issue presented in Mercury’s federal suit was the arbitrability of the dispute between Mercury and the Hospital. Federal law in the terms of the Arbitration Act governs that issue in either state or federal court.... Section 2 [of the FAA, 9 U.S.C. § 2] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. (emphasis added)
As earlier noted, Louisiana statutory provisions echo the Federal Arbitration Act, 9 U.S.C. § 1 et seq.; Firmin v. Garber, supra, 353 So.2d at 977. Louisiana courts look to federal law in interpreting the Louisiana arbitration statutes. Lake-land Anesthesia, Inc. v. Cigna Healthcare of La., Inc., 01-1059, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 698 (stating: “The Louisiana Arbitration Law (‘LAL’) is virtually identical to the United States Arbitration Act [citation omitted]; thus, Louisiana courts look to federal law in interpreting the LAL.”). More pertinently, in this case the specific choice of the FAA is stated in the Regions promissory note:
^GOVERNING LAW. “This Note will be governed by federal law applicable to Lender, and to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions.” Further, the note states: “The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision”.
Federal courts apply the doctrine of equitable estoppel. The court in Grigson, supra, 210 F.3d 524, 526, stated:
[I]n certain limited instances, pursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff. ....
The linchpin for equitable estoppel is equity-fairness. For the case at hand, to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness.
Id. at 528.
[Detrimental reliance is one of the elements for the usual application of equitable estoppel. E.g. In re Coastal Plains, 179 F.3d 197, 207 (5th Cir.1999).

Id.

The federal fifth circuit in Washington Mutual Finance Group. LLC v. Bailey, 364 F.3d 260, 267 (5th Cir.2004), stated:
Numerous federal circuit courts, including this one, have recognized the operation of the doctrine of equitable estoppel on non-signatories in an arbitration context, [citations omitted].
This court has applied the doctrine of equitable estoppel before. In Billieson v. City of New Orleans, 02-1993, pp. 9-10 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 563, we stated: “The doctrine of equitable estoppel applies to contract |12disputes.” And a party must claim that it has changed its position in justifiable reliance on any voluntary conduct on the part of the plaintiffs. Id.
Accordingly, Regions Bank is equitably estopped from objecting to Mr. Schmidt’s demand that his obligation be submitted to arbitration.
*1292 REMAND INSTRUCTIONS
We remand this matter to the district court. The district court shall take no further action in this matter while the matter is pending in arbitration.
DECREE
Writ granted. The trial court’s interlocutory judgment denying Stephen J. Schmidt’s motion for stay is vacated. These proceedings are stayed pending arbitration. The matter is remanded to the trial court, subject to the stay.
WRIT GRANTED;
STAY GRANTED;
REMANDED.
LOVE, J., Concurs with reasons.
LOMBARD, J., Concurs in the result.

. Mr. Schmidt also seeks review of the denial of his exception of no cause of action. The petition clearly discloses a cause of action against Mr. Schmidt under the guaranty agreement he signed with the bank. We grant him no relief insofar as he seeks review of the ruling on that exception.

. The promissory note contains the statement: "GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.” This note was signed ONLY by JRE, LLC and Regions. Mssrs. Schmidt and Weber signed the note as:' Stephen J. Schmidt Member of JOURDAN RIVER ESTATES, LLC and Earl E. Weber, Jr„ Member of JOURDAN RIVER ESTATES, LLC.
The Commercial Guaranty was executed by Mr. Schmidt as Guarantor; the Guaranty named the Borrower as Jourdan River Estates, LLC, which supplied its tax identification number and its New Orleans, LA, address; the Guaranty named the Lender as Regions Bank. Mr. Schmidt was the only sig-natoiy of that document, and he signed his name as an individual, supplying his personal Social Security number and Metairie, LA, address.
The guaranty states, under MISCELLANEOUS PROVISIONS:
Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. (Page 3).
Further, the guaranty states, in DEFINITIONS:
... .Note. The word "Note” means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinanc-ings of, consolidations of and substitutions of and for promissory notes or credit agreements.
Related Documents. The words "Related Documents” mean all promissory notes, credit agreements, loan agreements, environmental agreements, guarantee, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Borrower's indebtedness, (emphasis added).

. Mr. Saavedra asserted claims of breach of contract, fraud, intentional misrepresentation, conversion and violation of the Unfair Trade Practices Act based on the non-return of the purchase price when the development of the subdivision became impossible.

. We distinguish equitable estoppel and collateral estoppel, and emphasize that Louisiana law does not recognize the doctrine of collateral estoppel. Steptoe v. Lallie Kemp Hospital, 634 So.2d 331, 335 (La.1994); Welch v.Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978). Collateral estoppel is not the same as judicial estoppel or equitable estoppel. Miller v. Conagra, Inc., 08-0021, p. 9 (La.9/8/08), 991 So.2d 445, 452. " ‘Judicial estoppel’ is an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.” Id. Judicial estoppel is an equitable doctrine and may be invoked at a court’s discretion. Id.