# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30525

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2015

Lyle W. Cayce
Clerk

PERSHING, L.L.C.,

Plaintiff–Appellee,

v.

WANDA BEVIS; THOMAS BOWDEN, also known as Eddie Bowden;
ROBERT E. FELDMAN; DEBORAH FORBES; RUSSELL SHANE
GAUTREAUX; AMERITRUST CORPORATION, As Trustee of Mark Calvin
Johnson Trust No. 1; CLAUDE MARQUETTE; KATHLEEN S. MIER;
LOUIS MIER; WILLIAM PHILLIPS; HOLLY SCHWENDIMANN; HOWARD
SKLAR; ROMINA SUMPTER; FRED TELLER,

Defendants–Appellants.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-672

Before KING, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:*

This litigation arises out of the collapse of the Stanford Ponzi scheme.
Appellee Pershing, L.L.C. (Pershing) sued to enjoin the Appellants (Bevis
Investors), a group of investors who allegedly sustained losses as a result of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-30525

that scheme, from arbitrating their claims against Pershing before the Financial Industry Regulatory Authority (FINRA).  The district court granted Pershing's requested relief.  We affirm.

**I**

The Stanford Ponzi scheme has been the subject of numerous appeals before this court and the Supreme Court.[1]  A summary of the scheme follows:

> Essentially, Stanford and his companies sold . . . certificates of deposit in Stanford International Bank. Those certificates were debt assets that promised a fixed rate of return.  The plaintiffs expected that Stanford International Bank would use the money it received to buy highly lucrative assets.  But instead, Stanford and his associates used the money provided by new investors to repay old investors, to finance an elaborate lifestyle, and to finance speculative real estate ventures.[2]

The Bevis Investors allege they purchased certificates of deposit (CDs) issued by Stanford International Bank (SIB), an offshore bank operating out of Antigua, either directly from SIB or through Stanford Trust Company (STC), one of SIB's affiliates.

Pershing is a FINRA-regulated clearing broker that provides clearing and administrative services to financial institutions.  Because of Pershing's FINRA membership, its customers have the right to compel Pershing to arbitrate their disputes under FINRA Rule 12200.  Pershing executed a Clearing Agreement to provide clearing services to the Stanford Group Company (SGC) between 2005 and 2009.  Pershing had no relationship with any other Stanford entity.

---

[1] *See, e.g.*, *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir. 2013); *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012).

[2] *Chadbourne*, 134 S. Ct. at 1064-65 (internal citations and quotations omitted).

No. 14-30525

After the collapse of the Stanford Ponzi scheme, a group of one hundred investors initiated an arbitration proceeding against Pershing before FINRA, captioned *Kiebach v. Pershing LLC*,[3] alleging that Pershing played a material role in defrauding them.    Eighty-four of these investors (the Pershing Investors) used Pershing's services in the course of purchasing SIB CDs from SGC.    This set of investors signed Client and Margin Agreements with Pershing, which contained arbitration provisions.    Because Pershing directly contracted with these investors, it has not challenged their right to arbitrate.

The Bevis Investors are the remaining sixteen investors.    Pershing sued to enjoin the Bevis Investors from asserting claims in FINRA arbitration because it had no contractual relationship with them, and because they could not establish such a relationship through any estoppel theory.    The district court granted Pershing's requested relief.    The Bevis Investors appealed.

## II

This case, in essence, turns on the applicability of equitable estoppel. The Supreme Court made clear in *Arthur Andersen LLP v. Carlisle*[4] that equitable-estoppel claims are matters of state contract law.[5]    Here, because the parties cited exclusively to federal precedent, the district court addressed the

---

[3] FINRA Case No. 13-01692, *available at* http://finraawardsonline.finra.org /viewdocument.aspx?DocNB=65293.

[4] 556 U.S. 624 (2009).

[5] *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261-62 (5th Cir. 2014) ("*Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia*, equitable estoppel if the relevant state contract law so permits.    Consequently, prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law . . . have been modified to conform with *Arthur Andersen*.").

No. 14-30525

dispute under federal common law, rather than under Louisiana law. However, federal law appears to be coextensive with Louisiana law.[6]

We review a district court's application of equitable estoppel for abuse of discretion.[7] "To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous."[8]

### III

Generally, "a party cannot be compelled to arbitrate a matter without its agreement."[9] It is undisputed that Pershing has not agreed to arbitrate the Bevis Investors' claims. Thus, absent an exception, the Bevis Investors cannot force Pershing to arbitrate before FINRA.

The Bevis Investors argue two exceptions permit it to compel Pershing to arbitrate: alternative estoppel and direct-benefit estoppel. Both are theories of equitable estoppel. For the reasons that follow, the district court did not err in refusing to compel arbitration under either theory.

---

[6] *See DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011) ("Where there are no differences between the relevant substantive laws . . ., there is no conflict, and a court need not undertake a choice of law analysis." (alteration in original) (quoting *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005))); *see also Regions Bank v. Weber*, 2010-1169, pp. 7-8 (La. App. 4 Cir. 12/15/10); 53 So. 3d 1284, 1289-90 (recognizing a reliance on federal jurisprudence for the interpretation of Louisiana's arbitration statutes); *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 2003-1662, pp. 16-20 & n.19 (La. App. 4 Cir. 3/17/04); 871 So. 2d 380, 392-94 & n.19 ("Our finding is consistent with the federal jurisprudence, which has narrowly construed the contexts in which a signatory may compel a non-signatory to arbitrate a dispute."); *Billieson v. City of New Orleans*, 2002-1993, pp. 5-7 (La. App. 4 Cir. 9/17/03); 863 So. 2d 557, 561-62.

[7] *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)).

[8] *Id.* at 399 (quoting *Grigson*, 210 F.3d at 528).

[9] *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003) (internal quotation marks omitted).

No. 14-30525

## A

The Bevis Investors first contend that they can compel Pershing to arbitrate under a theory of alternative estoppel. Alternative estoppel permits a nonsignatory to an arbitration agreement to compel a signatory to such agreement to arbitrate a claim in two "rare" situations.[10]

The first situation requires that the signatory (Pershing) assert a contractual claim against a nonsignatory (Bevis Investors) then refuse to honor an arbitration provision contained in that contract.[11] But Pershing explicitly disclaims any contractual relationship with the Bevis Investors and has not brought any contract-based claims against the Bevis Investors. Accordingly, this situation is inapplicable.

The second situation requires that the signatory assert a claim of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[12] But Pershing has not raised allegations of substantially interdependent and concerted misconduct by the Bevis Investors and one or more signatories to any contract.

## B

The Bevis Investors also contend that they can compel Pershing to arbitrate under a theory of direct-benefit estoppel. To stake out a direct-benefit-estoppel claim, the Bevis Investors must establish that they are party

---

[10] *See Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (citing *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347-49 (5th Cir. 2002)).

[11] *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

[12] *Id.* at 528 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

No. 14-30525

to a contract that contains an arbitration clause to which Pershing was a non-signatory, and that Pershing "embraced" this contract.[13]

Under FINRA Rule 12200, arbitration clauses are included in contracts between FINRA members and customers.[14] For purposes of the present proceeding, even were we to assume, without deciding, that the Bevis Investors could pierce the corporate veil to establish a FINRA-based contractual relationship with SGC,[15] and therefore, the Bevis Investors are party to a contract containing a FINRA Rule 12200 arbitration clause, their direct-benefit-estoppel claim fails.

"Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract."[16] "A nonsignatory can 'embrace' a contract containing an arbitration

---

[13] *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

[14] The text of the rule provides:

Parties must arbitrate a dispute under the Code if:

> Arbitration under the Code is either:
>
> > (1) Required by a written agreement, or
> >
> > (2) Requested by the customer;
>
> The dispute is between a customer and a member or associated person of a member; and
>
> The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200, *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4106.

[15] *See, e.g.*, *SEC v. Sec. Investor Prot. Corp.*, 758 F.3d 357, 364-67 (D.C. Cir. 2014) (assuming investors could substantively consolidate the Stanford entities before disposing of their claims on other grounds).

[16] *Noble Drilling Servs.*, 620 F.3d at 473 (alteration in original) (internal quotation marks omitted).

clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."[17]  The parties do not dispute that the second scenario is inapplicable.

The Bevis Investors contend solely that Pershing embraced the contract between the Bevis Investors and SGC—which we assume, but do not decide, exists under a veil-piercing theory—by knowingly seeking and obtaining benefits from that contract, and that Pershing is now attempting to avoid the contract's Rule 12200 arbitration clause.  Their argument fails because Pershing neither knowingly exploited nor directly benefited from the contract at issue.

A nonsignatory knowingly exploits a contractual relationship if it "had actual knowledge of the contract containing the arbitration clause."[18]  For example, in *Noble Drilling Services, Inc. v. Certex USA, Inc.*, we held that the party attempting to compel arbitration could not satisfy the knowledge requirement because Noble, the nonsignatory, did not know about the specific contracts at issue:

> Appellees do not point to any evidence that Noble had any knowledge of the Purchase Order Agreements at the time Noble purchased and received the ropes . . . .  Because no evidence supports a conclusion that Noble knew of the terms of the Purchase Order Agreements, Noble could not have the knowledge necessary

---

[17] *Id.*

[18] *Id.*

to support the "knowingly exploited" theory of direct benefits estoppel.[19]

A nonsignatory must have specific knowledge of the relevant agreement—a nonsignatory's generalized sense that two contracting parties have a course of dealing will not satisfy this requirement.[20] Here, the Bevis Investors have adduced no evidence that Pershing was aware that they had executed contracts to purchase CDs from the Stanford entities. Accordingly, the Bevis Investors cannot satisfy the knowledge requirement of their direct-benefit-estoppel claim.

Benefits are "direct" if they "flow[] directly from the agreement. . . . By contrast, the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."[21] In *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, for example, we held that Hellenic, a ship-owning consortium, received direct benefits from a contract between a ship-inspection agency and the previous ship-owner because the contract provided for an inspection of the ship prior to Hellenic's planned purchase of the vessel.[22] Here, by contrast, the evidence demonstrates that Pershing received compensation only for its work in closing sales between the Pershing Investors and SGC. At most, Pershing indirectly benefited from the Bevis Investors' contracts because their CD purchases prolonged the lifespan of the Stanford Ponzi scheme, enabling Pershing to clear more transactions before

---

[19] *Id.* at 473-74; *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (concluding that a nonsignatory satisfied the knowledge requirement when it received a copy of the agreement containing an arbitration clause).

[20] *See Noble Drilling Servs.*, 620 F.3d at 473.

[21] *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *see also Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361-62 (5th Cir. 2003).

[22] *Hellenic Inv. Fund., Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-20 (5th Cir. 2006).

the scheme collapsed. The Bevis Investors conceded as much during the preliminary-injunction hearing and in their brief before this court. Because the Bevis Investors cannot demonstrate that Pershing received any tangible benefit flowing directly from their purchase of CDs from the Stanford entities, their direct-benefit-estoppel claim fails on this ground, as well.

## IV

Finally, the Bevis Investors contend that the district court erred in denying one of their discovery requests. They identified this issue for review in their initial brief, but they failed to cite to authority or identify specific discovery requests that were denied.[23] Accordingly, they waived this argument. They more fully present the issue in their reply brief, but we "will not consider a claim raised for the first time in a reply brief."[24]

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[23] *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (citing *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993) (failure to cite to authority waives argument)); FED. R. APP. P. 28(a)(8)(a) (brief must contain "appellant's contentions and the reasons for them" with "citations to the authorities and parts of the record on which the appellant relies").

[24] *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 n.3 (5th Cir. 2012) (quoting *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)).