PAUL A. BONIN, Judge.
hTogether Byron Bolden and Rodney Reed filed a wide-ranging petition against FedEx Ground Package Systems, Inc., in which they sought damages and other relief based on a host of instances of wrongful conduct. They allege a variety of claims related to the execution, implementation, and termination of Operating Agreements they signed with FedEx Ground as well as provisions of those agreements relative to remedies. FedEx Ground filed a combination dilatory excep *681 tion of prematurity and a motion to stay based on identical provisions in both Operating Agreements requiring arbitration of any dispute concerning termination.
The trial judge granted the exception and the stay, but did not expressly dismiss the suit. Mr. Bolden and Mr. Reed filed an appeal from the court’s ruling.
First, because we find that the ruling is not an appealable judgment, we convert the plaintiffs’ appeal to a writ application. Second, because we find that the scope of the arbitration provision is limited and that the trial judge failed to appropriately determine which issues in dispute are within the scope of the arbitration provision, we grant the writ application, reverse the trial court’s ruling, and remand to the district court with instructions. We explain in detail our ruling.
_ki
In this Part we explain why the trial court’s ruling is not an appealable judgment and why we can only review this matter under our supervisory jurisdiction. Our discussion of the procedural posture of the case presages the substantive discussion, which we will address in subsequent Parts.
In this case, the trial judge granted FedEx Ground’s Exception of Prematurity as well as its Motion to stay without further explanation. In the judgment, the trial court ordered, adjudged and decreed “that Defendants’ Exception of Prematurity/Motion to stay is granted, and Plaintiffs are ordered to arbitrate their claims in accordance with the terms of the Operating Agreements, during which these proceedings are stayed. Defendants’ Exception of Improper Cumulation of Parties is denied at this time as moot.”
The Louisiana Constitution of 1974 provides for our appellate jurisdiction and our supervisory jurisdiction. See La. Const, art. 5, § 10(A). “Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court.” La. C.C.P. ART. 2082. As we have observed, “the difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right.” Livingston Downs Racing Ass’n, Inc. v. Louisiana State Racing Com’n, 96-1215 (La.App. 4 Cir. 6/5/96), 675 So.2d 1214, 1216.
“A final judgment is appealable in all cases in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814.” La. C.C.P. art. 2083 A. “A judgment that determines the merits in whole or in part is a final judgment.” La. C.C.P. art. 1841. “No appeal may be taken | .¡¡from a partial final judgment under Article 1915(B) until the judgment has been designated a final judgment under Article 1915(B). An appeal may be taken from a final judgment under Article 1915(A) without the judgment being so designated.” La. C.C.P. art. 1911.
“A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.” La. C.C.P. art. 1841; Collins v. Prudential Ins. Co. of America, 99-1423, p. 6 (La.1/19/00), 752 So.2d 825, 829. “An interlocutory judgment is appealable only when expressly provided by law.” La. C.C.P. art. 2083 C; see, e.g., La. C.C.P. art. 3612 B (relating to the denial or the granting of a preliminary injunction), or La. C.C.P. art. 592 A(3)(b) (relating to certification in class actions). If not expressly provided by law, there is no right to appeal an interlocutory judgment. See, e.g., La. C.C.P. art. 968 (“An appeal does *682 not lie from the court’s refusal to render any judgment on the pleading or summary judgment.”).
The judgment which Mr. Bolden and Mr. Reed “appeal” is not a final judgment. The judgment did not dismiss any party. See La. C.C.P. art. 1915 A(l). The judgment does not even purport to dismiss some, much less all, of the claims of the plaintiffs. See La. C.C.P. art. 1915 B(l). “If the dilatory exception pleading prematurity is sustained, the premature action, claim, demand, issue or theory shall be dismissed.” La. C.C.P. art. 933 A (emphasis added). If the trial judge in this case had actually intended that all issues were arbitrable, the sustaining of FedEx Ground’s dilatory exception of prematurity as to all of the plaintiffs’ claims would have resulted in a final appealable judgment because it would have determined the whole of the merits. See La. C.C.P. ART. 1911. But because he did not dismiss all claims, the judgment has only determined the merits |4“in part.” The judgment does not qualify as a partial final judgment, which is appealable, because does not meet any of the requirements of La. C.C.P. art. 1915 A, and it has not received from the trial court a designation as a final judgment because “there is no just reason for delay.” La. C.C.P. art. 1915 B(l).
Had the trial judge in this case granted the exception of prematurity and entered the dismissal as required by Article 933 as to some of the plaintiffs’ claims, we would be faced with a partial judgment which has not been designated as final. A partial judgment which requires designation as a final judgment by the trial court but does not receive such a designation is not an appealable judgment. See La. C.C.P. art. 1915 B(2) (“In the absence of such a determination and designation, [any such order or decision] ... shall not constitute a final judgment for the purpose of an immediate appeal.”) Such an undesignated judgment, like an interlocutory judgment, “may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.” La. C.C.P. art. 1915 B(2); see, e.g., Regions Bank v. Weber, 10-1169, p. 1 (La.App. 4 Cir. 12/15/10), 53 So.3d 1284 (“An interlocutory judgment may be reconsidered or revised upon proper motion at any time until the rendition of a final judgment.”), citing to Magallanes v. Norfolk Southern Railway Co., 09-0605, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 985, 988. See also Roger A. Stetter, Louisiana Civil Appellate Procedure, § 3:20 (2010-2011 ed.) (“Any partial judgment that does not dismiss a party and that is not expressly authorized by Article 1915 is interlocutory in character rather than final.”).
In Collins, the Louisiana Supreme Court explained the review of interlocutory judgments as they pertain to arbitration orders:
LMost courts addressing arguments about whether a judgment concerning arbitration is final or interlocutory distinguish between cases where the only issue before the court is a request to determine the availability of arbitration and cases where the court is asked to resolve other issues, such as the merits of the controversy. The first category of cases are often termed “independent proceedings” and judgments in such proceedings are considered final and ap-pealable because nothing else is before the court. The second category of cases are termed “embedded proceedings” in which a party has asked for relief beyond an order compelling or prohibiting arbitration. Orders compelling arbitration in embedded proceedings are con *683 sidered interlocutory and are not immediately appealable.
Collins, 99-1423, p. 6, 752 So.2d at 829, n. 8 (citations omitted). The court noted that although an interlocutory judgment ordering arbitration is not subject to an immediate appeal, an aggrieved party under these circumstances is not entirely barred from relief. “In a ease where the trial judge has committed a clear error in ordering arbitration, supervisory relief might be appropriate based upon the facts and circumstances of a particular case.” Collins, 99-1423, p. 9, 752 So.2d at 831. The court concluded, however, that “in keeping with our policy favoring arbitration, such relief should be granted only sparingly.” Id.
| RThus, the proper procedural vehicle to seek review of this judgment, whether denominated a partial judgment which is not designated as final or an interlocutory judgment which is not immediately appealable, is by an application for supervisory relief. See Lalla v. Calamar, N.V., 08-0952, p. 6 (La.App. 4 Cir. 2/11/09), 5 So.3d 927, 931. “A court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time, according to the discretion of the court.” Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
Thus, we can exercise our discretion to consider this judgment under our supervisory authority. We have converted appeals of nonappealable interlocutory judgments to applications for supervisory writs in cases where the motions for appeal were filed within the thirty-day period allowed for the filing of applications for supervisory writs. See, e.g., Ordoyne v. Ordoyne, 07-0235 (La.App. 4 Cir. 4/2/08), 982 So.2d 899; Ganier v. Inglewood Homes, Inc., 06-0642 (La.App. 4 Cir. 11/8/06), 944 So.2d 753; Rule 4-3, Uniform Rules-Courts of Appeal.
Judgment in this case was rendered on March 4, 2010, and the plaintiffs filed their motion for appeal on March 16, 2010; accordingly we convert their appeal to a timely-filed application for supervisory relief. We now turn to the particular facts giving rise to the claims in this case.
II
FedEx Ground operates through a system of independent contractors who contract to pick up and deliver packages shipped by FedEx Ground customers. Mr. Bolden and Mr. Reed, operating out of FedEx Ground’s terminal in St. Rose, Louisiana, contracted with FedEx Ground to provide pickup and delivery services. In order to commence work as drivers for FedEx Ground, prospective drivers must sign an Operating Agreement, obtain a delivery truck that meets FedEx Ground’s specifications, and either purchase a delivery route from another driver or obtain a route directly from FedEx Ground. Mr. Bolden and Mr. Reed each signed one-year Operating Agreements, which automatically renew each year, subject to the possibility of non-renewal or termination under specified conditions. Section 11.2 of each Operating Agreement provides:
This Agreement shall automatically renew for successive terms of one year each after expiration of the initial term unless Contractor or FedEx Ground provides the other 17party notice of non-renewal in writing at least 30 days prior to the expiration of the initial term or any successive renewal term.
Both plaintiffs’ Operating Agreements provide that issues of termination or constructive termination of the Agreement shall be submitted to arbitration. Each plaintiffs’ Operating Agreement contains the following clause:
*684 12.3 Arbitration of Asserted Wrongful Termination. In the event FedEx Ground acts to terminate this Agreement (which acts shall include any claim by Contractor of constructive termination) and Contractor disagrees with such termination or asserts that the actions of FedEx Ground are not authorized under the terms of this Agreement, then each such disagreement (but no others) shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ...
(emphasis added)
Additionally, each Operating Agreement contains a choice of law provision stating: “This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.” Mr. Bolden and Mr. Reed ask that we find that this arbitration clause is “unconscionable” under Pennsylvania law. However, because of a dearth of evidence and confusion of findings in the lower court, we are unable to reach this question. We instead examine the factual circumstances surrounding the plaintiffs’ claims in order to review the action of the trial court in subsequent Parts.
Ill
As the facts giving rise to the claims of Mr. Bolden are distinct from those of Mr. Reed, we discuss each plaintiffs circumstances in some detail.
Mr. Bolden signed an Operating Agreement with FedEx Ground on October 10, 2007, authorizing him to work as a contract driver for FedEx Ground for a one-year term. Prior to the expiration of the term, Joey Joubert of FedEx Ground | ^informed Mr. Bolden that his contract would not be renewed at the end of the term. Mr. Bolden then sold his route to his wife, Valerie Bolden, and he arranged to begin driving for other contract drivers, including Mrs. Bolden, after the expiration of his contract. Mr. Bolden was soon informed that his name had been removed from the approved driver list and he would not be able to drive for other contract drivers.
Mr. Reed purchased a ground route and signed an Operating Agreement with FedEx Ground on April 8, 2008, authorizing him to work as a contract driver for a term of one year. Mr. Reed’s contract, like Mr. Bolden’s, provided that the Agreement would automatically renew for successive one-year terms unless certain conditions were met. Mr. Reed’s contract was terminated on August 24, 2009, his route was redistributed to another driver, and his name was removed from the list of approved drivers. FedEx Ground’s brief asserts that, prior to initiating this lawsuit, Mr. Reed filed for arbitration.
During a short trial of FedEx Ground’s Exception of Prematurity/Motion to Stay, on February 26, 2010, the district judge informed the parties that the claims would need to go to arbitration and that no live testimony would be necessary because both parties had submitted affidavits. The judge ruled on March 4, 2010, to stay the district court proceedings pending the results of arbitration. Although the judge issued written reasons for judgment on March 11, 2010, he noted only that he was adopting FedEx Ground’s Memorandum in Support of the Exception of Prematurity and Alternative Motion to Stay as well as its Reply Memorandum in response to Plaintiffs Opposition to that exception and motion in toto.
J¿V
Federal, Louisiana, and Pennsylvania law favor arbitration. See discussion, Part IV B, post. On the one hand, FedEx Ground is entitled to enforce a valid arbitration clause. On the other hand, Mr. *685 Bolden and Mr. Reed may only be forced to arbitrate those issues that they have agreed to send to arbitration.
The trial judge here seems to have made inconsistent rulings. If the judge has sent all issues to arbitration, he should have said so and subsequently dismissed the case as required By La. C.C.P. art. 933 A. If the trial judge has instead stayed some of the issues pending resolution of other, arbitrable issues, he should delineate those issues which are arbitrable and those which are not.
A
Neither party suggests that we resolve this issue under George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977). George Engine, which has been questioned but never overruled, held that a party may attack the validity of a contract that contains an arbitration clause on the grounds that the contract was void ab initio. Id. at 885.[1] Although their petition contains allegations that they were fraudulently induced into signing the Operating Agreements, the plaintiffs focus their argument on the unenforceability of the arbitration clause itself under Pennsylvania law, an argument that was not addressed by the trial court. When the plaintiffs raised the issue of unenforceability of the arbitration clause under Pennsylvania law, the trial judge simply said, “If the Fourth [Circuit] sends it back we’ll deal with it then. I think it needs to go to arbitration.”
IiqB
Consequently, the trial court stayed the proceedings and ordered the case to arbitration without specifying which issues are subject to the stay and which issues are arbitrable. This gives rise to a question of the arbitrability of the claims that the district court failed to consider.
We are presented with what has been termed a “substantive” question of arbitra-bility that is appropriately decided by the trial court — as opposed to a “procedural” question of arbitrability, which is to be decided by the arbitrator. See Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 03-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 390 (“[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court ... ‘[Procedural’ questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide.”).
The determination as to whether to stay the proceedings and/or to compel arbitration is a question of law. Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560, citing Hennecke v. Canepa, 96-0772 (La.App. 4 Cir. 5/21/97), 700 So.2d 521. Review of questions of law is simply to determine whether the trial court was legally correct or incorrect. Cangelosi v. Allstate Ins. Co., 96 0159, p. 3 (La.App. 1 Cir. 9/27/96), 680 So.2d 1358, 1360.
*686 The Louisiana Supreme Court, in Aguil-lard v. Auction Management Corp., adopted the United States Supreme Court’s interpretation of federal arbitration law, Innoting that “even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration.” Aguillard v. Auction Management Corp., 04-2804, p. 25 (La.6/29/05), 908 So.2d 1, 18. Louisiana courts have recognized that the Louisiana Binding Arbitration law, La. R.S. 9:4201-4217, is virtually identical to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and both federal and state jurisprudence hold that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. Lakeland, 03-1662, pp. 8-9, 871 So.2d at 387. Pennsylvania law also approvingly cites the principle that doubts as to arbitrability should be resolved in favor of arbitration. See Lytle v. CitiFinancial Services, Inc., 810 A.2d 643, 656-57 (Pa.Super.2002) (citing Bank One, N.A. v. Coates, 125 F.Supp.2d 819, 828-29 (S.D.Miss.2001), aff'd, 34 Fed.Appx. 964 (5th Cir.Miss.), 2002 WL 663804, 2002 U.S.App.LEXIS 7759 (2002)).
In Howsam v. Dean Witter Reynolds, Inc., the United States Supreme Court explained the proper mode of resolving the “question of arbitrability.” “The question of whether the parties have submitted a particular dispute to arbitration, i.e., the ‘question of arbitrability,’ is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.” Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (emphasis and internal citations omitted). In explaining that the phrase “question of arbitrability” has a limited scope, the Supreme Court stated:
The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to 1^the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.
Howsam, 537 U.S. at 83-84, 123 S.Ct. 588 (emphasis added).[2]
The Louisiana Supreme Court, in Breaux v. Stewart Enterprises, Inc., reiterated the precept from Collins, supra, that the trial courts are the proper entities to determine arbitrable matters:
Before a district court may compel arbitration, the trial judge must make two preliminary determinations. First, the trial judge must ensure that a valid arbitration agreement between the parties exists. Second, the judge must decide whether the dispute at issue falls within the scope of the agreement.
Breaux v. Steward Enterprises, Inc., 04-1706, p. 1 (La.10/08/04), 883 So.2d 983, 983 (emphasis added; quoting Collins, 99-1423, pp. 9-10, 752 So.2d 825, 831. On review, a trial court’s judgment which compels arbitration is reviewed under the same two-prong test: 1) whether there is a valid arbitration agreement and 2) whether the dispute falls “within the scope” of the agreement. Lakeland, 03-1662, p. 9, 871 So.2d 380, 388.[3] The trial judge failed to *687 make these preliminary determinations. We discuss this failure and its confusing impact on this litigation — particularly because it involves a narrow arbitration clause — in the subsequent Parts.
lisC
The district court stayed the proceedings and indiscriminately ordered the parties to proceed to arbitration. The issue is whether the trial judge acted prematurely in staying and ordering to arbitration all issues in the proceedings without first determining which issues were arbitrable under this limited arbitration clause.
In this case, the trial judge issued the stay and ordered arbitration, stating:
So, now let’s go to — and therefore, everything else is stayed until the arbitrator comes back.
And another thing is this; everything you raise, all of the issues in dispute, you raise can be considered by an arbitrator. That’s what he does.
It is difficult for us to discern what the trial court has ordered to proceed to arbitration and what has been stayed. The judge appears to have stayed some of the issues while simultaneously sending “everything [the plaintiffs] raise” to arbitration. Compounding this confusion is the fact that the trial court adopted two of FedEx Ground’s memoranda in toto as its reasons for judgment. These memoranda provide various assertions upon which the trial court made no specific ruling: for example, FedEx Ground claims that Mr. Reed, who has already instituted arbitration proceedings, is barred from now disputing the validity of the arbitration agreement. FedEx Ground also asserts in its memoranda that the plaintiffs have been improperly cumulated. When the attorney for FedEx Ground requested that the trial judge rule on the Exception of Improper Cumulation, the judge said, “But I think all that’s stayed until the arbitrator comes back.” The judge’s language suggests that he contemplated that not all issues in the matter |14were arbitrable, and yet he did not specify which of the plaintiffs’ claims fell within the scope of the arbitration agreement.[4]
Our court has rejected the notion that simply because an arbitration clause ap *688 pears in an Operating Agreement, the law requires referral to an arbitrator for any further decision. In Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc., 97-1672, pp. 5-6 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, 556-557, our court stated:
La. R.S. 9:4202 makes clear that court proceedings will be stayed when “brought upon any issue referable to arbitration” and then only if the court is “satisfied that the issue involved ... is referable to arbitration.” This statute gives recognition to the fact that under Civil Code article 3102, “[p]arties may submit either all their differences, or only some of them in particular” to arbitration. If the parties to a contract have explicitly agreed to submit all disputes to an arbitrator, then a determination that the contract is valid will necessarily suffice to require enforcement of the arbitration clause. However, if the parties’ agreement to arbitrate is limited to particular issues or types of disputes, the language of 9:1202 expressly requires the court, rather than the arbitrator, to further determine whether the particular issue in dispute is within the scope of the arbitration clause. We find that the agreement to arbitrate in this case is limited, so that the trial court was required to determine if the dispute herein was within the scope of that agreement, (emphasis added)
This statement was echoed in Lorusso v. Landrieu, 02-2346, pp. 5-6 (La.App. 4 Cir. 5/21/03), 848 So.2d 656, 659 (citing Metro Riverboat):
This court has held that in cases where “the parties have contracted to submit all disputes to arbitration, then the | ^determination that the contract is valid will necessarily suffice to require enforcement of the arbitration clause.” However, if the parties’ agreement to arbitrate is limited to particular issues or types of disputes, the language of 9:4.202 expressly requires the court, rather than the arbitrator, to further determine whether the particular issue in dispute is within the scope of the arbitration clause, (emphasis added)
But in Lontsso, in contrast with Metro Riverboat, we found that the trial judge erred in failing to order arbitration because the arbitration clause stated that it covered dispute resolution of “any other grievance” arising out of the agreement. Lorusso, 02-2346, p. 6, 848 So.2d at 659. Under the narrower arbitration clause in Metro Riverboat, we found that because the arbitration clause covered only specific disputes that may arise under the agreement, the district court must first determine what particular issues lie within the scope of the arbitration clause. Metro Riverboat, 97-1672, p. 6, 706 So.2d at 557.
The distinction between broad and narrow arbitration clauses is important here. The FedEx Ground arbitration clause at issue is a narrow one — covering only issues of termination or constructive termination “but no others.” The clause does not require that all issues arising under the Operating Agreement be submitted to arbitration. Moreover, the plaintiffs’ claims arise out of two distinct sets of circumstances. Mr. Bolden’s claim arises out of the non-renewal of his contract, whereas Mr. Reed’s claim arises out of the termination of his contract. Both plaintiffs, however, assert claims that could reasonably be interpreted as falling within the arbitration clause as issues of termination or constructive termination. Both plaintiffs allege in the petition that they were fraudulently induced into signing the Operating Agreement, and they both claim breach of contract and intentional/negligent interference with contract. Mr. Jou-bert, the other named 11fidefendant, was not a party to the contracts at issue. Ad *689 ditionally, Mr. Reed alleges that he is owed damages for conversion. None of these distinctions were acknowledged by the trial court in the proceedings below.
V
We acknowledge that the United States Supreme Court has set forth a presumption of arbitrability. In AT & T Technologies, Inc. v. Communications Workers of America, the Court explained that “where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.” AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
But as one commentator has noted:
When parties so tailor the arbitration clause that it is applicable only in a clearly defined situation, it indicates that the parties intended to limit the arbitra-ble issues to those specified. Where an arbitration provision is narrowly crafted, a court cannot presume, as it might if the provision were drafted broadly, that the parties agreed to submit all disputes to arbitration. Parties are not bound to arbitrate on an all-or-nothing basis but may choose to submit discrete issues to the arbitrator. Accordingly, an arbitration agreement should reflect, with specificity, which issues are to be subject to an arbitrator’s decision.
Larry E. Edmonson, Domke on Commercial Arbitration § 8:14 (3d ed.2010) (emphasis added).
We recognize our duty to defer to the trial judge. However, the trial judge in this case simply ordered that “everything else” was stayed pending arbitration and | ]7also found that all of the issues raised by the plaintiffs could be considered by the arbitrator. Without more, we are unable to reconcile these statements. Accordingly, we reverse and remand this matter in order for the trial judge to make specific findings according to the terms of the arbitration clause and the admissible evidence, and to rule on the exception and motion in a manner consistent with this opinion.
REMAND INSTRUCTIONS
The trial court is directed to conduct the hearing on the defendants’ combined Exception of Prematurity/Motion for Stay anew. The trial judge shall consider the evidence offered and, before ruling, shall make specific findings with respect to the issues we set forth. The trial judge shall make individualized findings respecting the claims raised by Mr. Bolden and respecting the claims raised by Mr. Reed.
With regard to each plaintiff and his claims, the trial, judge shall determine by the application of Pennsylvania law: (1) whether there exists in the Operating Agreement a valid arbitration agreement between the plaintiff and the defendants, (2) which of the individual plaintiffs claims fall within the scope of the arbitration clause, and (3) whether the individual plaintiffs claims against Mr. Joubert are within the scope of the arbitration clause even though Mr. Joubert is not signatory to the Operating Agreement.[5] Additionally, the trial judge shall make a finding *690 whether Mr. Reed has already instituted arbitration proceedings and, if so, whether such action precludes him from attacking the validity of the arbitration clause.
After the trial judge has made all findings necessary, he shall1 make an appropriate ruling. If the trial court determines that all of an individual plaintiffs |1sclaims are arbitrable, it shall order arbitration, deny the stay, grant the exception of prematurity, and dismiss the proceedings as to that plaintiff. If the trial court determines that none of an individual plaintiffs claims are arbitrable, it shall deny the exception of prematurity and the motion to stay. If the trial court determines that some but not all of an individual plaintiffs claims are arbitrable, then it shall identify which claims are arbitrable and which are not, order the arbitration of the identified arbitrable claims, sustain the exception of prematurity as to those claims and deny it as to all others, and grant a stay of the proceedings as to the non-arbitrable claims pending conclusion of arbitration.
DECREE
We convert the appeal of Mr. Bolden and Mr. Reed to an application for supervisory relief. We grant the writ and we reverse the trial court’s ruling of March 4, 2010, and remand the matter with instructions to the trial court.
WRIT GRANTED; REVERSED AND REMANDED.

. The holding in George Engine seemingly contradicts the United States Supreme Court's holding in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Louisiana Supreme Court in George Engine explained its diversion from Prima Paint, stating that Prima Paint involved an interpretation of the Federal Arbitration Act while George Engine was focused on the Louisiana Arbitration Law. For further discussion of these two cases and their divergent treatment of claims of fraud in the inducement of a contract containing an arbitration clause, see Long v. Jeb Breithaupt Design and Build Inc., 44,002, p. 14 (La.App. 2 Cir. 2/25/09), 4 So.3d 930, 939.

. An example of a gateway matter for the trial court to decide is the question of whether an arbitration contract is binding on parties who did not sign the contract. First Optioits of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-946, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

. Pennsylvania law, which would ultimately apply to interpret the contract, utilizes the *687 same two-part test:
We review a trial court’s denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court’s findings are supported by substantial evidence. Flender Corp. v. Tippins International, Inc., 830 A.2d 1279 (Pa.Super.Ct.2003). In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. Callan v. Oxford Land Development, Inc., 858 A.2d 1229 (Pa.Super.Ct.2004). The first determination is whether a valid agreement to arbitrate exists. D & H Distributing Co. v. National Union Fire Ins. Co., 817 A.2d 1164 (Pa.Super.Ct.2003). The second determination is whether the dispute is within the scope of the agreement. Id. Smay v. E.R. Stuebner, Inc., 2004 PA Super 493, 864 A.2d 1266, 1270 (Pa.Super.Ct.2004).

. Another complication arises on an eviden-tiary matter. At trial on the exception, evidence was submitted in the form of affidavits from each party. Both Mr. Bolden and Mr. Reed swore to adhesionary circumstances surrounding the signing of their Operating Agreements. These affidavits were contradicted by affidavits from FedEx Ground. The trial judge declined to hear live testimony at the hearing; he noted that such testimony would reflect nothing more than the contents of the affidavits. However, FedEx Ground complained in its Reply Memorandum in Support of its exceptions that these affidavits were filed untimely and thus inadmissible. This memorandum was adopted by the trial judge in his reasons for judgment. From these circumstances we cannot determine whether the trial judge considered the plaintiff's affidavits and found them incredible or whether the trial judge — pursuant to the adopted memoranda' — did not consider them because they were untimely.

. See Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 7 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 763, n. 5; Regions Bank v. Weber, 10-1169 (La.App. 4 Cir. 12/15/10), 53 So.3d 1284.