ROLAND L. BELSOME, Judge.
|tA & A Mechanical, Inc. appeals the trial court’s dismissal without prejudice of its claims against Satterfield & Pontikes Construction Group, L.L.C. and Chris Head and referral of the matter in its entirety to arbitration. For the reasons that follow, we find that the trial court committed legal error in failing to allow claims outside of the scope of the arbitration clause to proceed in state court and reverse and remand.
FACTS AND PROCEDURAL HISTORY
On November 25, 2008, Appellee, contractor Satterfield & Pontikes Construction Group, L.L.C. (“S & P”), entered into a subcontract with Appellant, A & A Mechanical, Inc. (“A & A”) to perform work in connection with the construction of L.B. Landry High School in Algiers, Louisiana. On January 6, 2011, A & A filed suit, naming S & P and Chris Head, the project manager for S & P, as defendants. In the petition, A & A asserted that it was not paid for all the work performed under the subcontract.[1] In addition to the breach of contract claims, |2A & A also alleged that Chris Head demanded side payments of cash and other benefits from A & A as a kickback on the job and threatened that if A & A refused to pay the kickbacks, he would make things “difficult” for A & A. A & A further asserted that although A & A’s principles notified George Pontikes, the manager of S & P, of Head’s demands for cash and kickbacks, neither S & P nor Pontikes attempted to address the issue.
A & A alleged that as a result of the refusal to provide kickbacks to Chris Head, A & A suffered retaliation. Specifically, A & A asserted that S & P barred A & A’s project manager, Kenny Diaz, from the jobsite; refused A & A’s payment applications, requiring A & A to resubmit payment applications and/or change order requests multiple times to include additional detail and supporting documentation beyond what was typically required; failed to respond to requests for information about the project; and refused to coordinate ongoing work with A & A. As a result, A & A argues that it suffered lost profits and business opportunity, and that A & A’s overhead and labor costs were increased. A & A contended that Chris Head and S & P’s actions and inactions constituted unfair trade practices and tor-tious interference; that S & P was vicariously liable for Chris Head’s actions; and that S & P had been unjustly enriched by A& A.
*366 S & P filed an exception of prematurity, arguing that the subcontract provided that any disputes arising out of the subcontract should be mediated, and if mediation was unsuccessful, the dispute was to be settled by binding arbitration. The matter was heard on March 18, 2011, and the trial court granted S & P’s | (¡exception on March 29, 2011, dismissing all of A & A’s claims without prejudice and referring the entire matter to arbitration. This appeal followed.
STANDARD OF REVIEW
A determination regarding whether to stay or to compel arbitration is a question of law. Saavedra v. Dealmaker Developments, LLC, 2008-1239, p. 6 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762, writ denied, 2009-0875 (La.6/5/09), 9 So.3d 871 (citing Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560). Accordingly, an appellate court reviews questions of law to determine whether the trial court was legally correct or incorrect. Id. Specifically, an appellate court “should consider de novo issues of law concerning whether the dispute was within the scope of the arbitration agreement, unless the parties also clearly agreed that the issue of whether a dispute was arbitrable was subject to arbitration.” Collins v. Prudential Ins. Co. of Am., 1999-1423, p. 7, n. 11 (La.1/19/00), 752 So.2d 825, 830; see also Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee, 2005-1491, pp. 4-5 (La.App. 4 Cir. 7/12/06), 936 So.2d 853, 856, writ denied, 2006-1995 (La.11/3/06), 940 So.2d 671 (recognizing that “[i]f the trial court’s decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such [an] incorrect decision is not entitled to deference by the reviewing court”)(quoting Dufrene v. HBOS Mfg., LP, 2003-2201, p. 2 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209).
DISCUSSION
At the outset, S & P argues that A & A has no right to directly appeal the trial court’s dismissal without prejudice of A & A’s claims, asserting that such judgment is interlocutory and not appealable. In this case, the trial court did not stay the proceedings pending arbitration; the court dismissed the matter in its entirety, |4leaving the trial court with nothing to decide. Therefore, the trial court’s judgment dismissing all of A & A’s claims was a determination of the merits and constitutes a final appealable judgment pursuant to La. C.C.P. art. 1841.[2]
A & A asserts three assignments of error for our review. First, A & A argues that the trial court erred in compelling arbitration when there was no evidence of a written agreement wherein A & A and Head agreed to arbitrate any disputes between them. A & A further submits that the trial court erred in compelling arbitration of A & A’s tortious conduct claims *367 against S & P because the tort actions fall outside the scope of the arbitration agreement contained within the subcontract. In the third and final assignment of error, A & A argues that the trial court erred in compelling arbitration of A & A’s vicarious liability claim because S & P is solidarily liable with Head’s for his tortious conduct and A & A has only one joint cause of action against Head and S & P.
The relevant portion of the subcontract between A & A and S & P provided, under the heading “Settlement Disputes” in Section 11, Paragraph (d):
In the event any controversy or dispute arises between Subcontractor [A & A] and Contractor [S & P] relating to this subcontract (or breach thereof), which dispute or controversy does not involve the correlative rights and duties of owner, Subcontractor shall request mediation of the dispute with Contractor and the parties shall attempt in good faith to mediate the dispute. Mediation shall be a condition precedent to any further rights that the Subcontractor has to the resolution of the dispute.
The subcontract further provides, in subsection (i) under Paragraph (d):
Islf the mediation is unsuccessful, then Subcontractor [A & A] agrees that Contractor [S & P] shall make the determination (in its sole discretion) as to whether the dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules (then applicable) of the American Arbitration Association (in which case Subcontractor [A & A] agrees that it will submit its disputes to such arbitration statutes including the Federal Arbitration Act). Any arbitration held under this provision shall be held in Harris County, Texas.[3]
Generally, any doubt should be resolved in favor of arbitration. Aguillard v. Auction Management Corp., 04-2804, 04-2857, p. 6 (La.6/29/05), 908 So.2d 1, 7; Dufrene v. HBOS Mfg., LP, 2003-2201, pp. 7-8 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1212-14 (per curiam). Additionally, “[w]hether a claim is brought in state court or federal court, and whether a claim is based on state or federal law, courts must enforce arbitration agreements in contracts covered by the FAA, notwithstanding any state statutory or jurisprudential rules to the contrary.” Collins, 1999-1423, p. 2, 752 So.2d at 827 (citing Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). However, the Louisiana Supreme Court has recognized that “[i]n a case where the trial judge has committed a clear error in ordering arbitration, supervisory relief might be appropriate based upon the facts and circumstances of a particular case.” Collins, 1999-1423, p. 9, 752 So.2d at 831. Likewise, to be consistent with the policy favoring arbitration, “such relief should be granted only sparingly.” Id.
Before referring claims to arbitration, however, it is well-settled that a trial court must first determine whether a dispute falls within the scope of the arbitration agreement:
| fiBefore a district court may compel arbitration, the trial judge must make two preliminary determinations. First, the trial judge must ensure that a valid arbitration agreement between the parties exists. Second, the judge must decide *368 whether the dispute at issue falls within the scope of the agreement.
Bolden v. FedEx Ground Package Sys., Inc., 2010-0940, p. 12 (La.App. 4 Cir. 2/16/11), 60 So.3d 679, 686 (quoting Breaux v. Stewart Enterprises, Inc., 2004-1706, p. 1 (La.10/8/04), 883 So.2d 983, 983; Collins, 99-1423, pp. 9-10, 752 So.2d at 831)(emphasis in original).
Thus, “[o]n review, a trial court’s judgment which compels arbitration is reviewed under the same two-prong test: 1) whether there is a valid arbitration agreement and 2) whether the dispute falls “within the scope’ of the agreement.” Bolden, 2010-0940, p. 12, 60 So.3d at 686 (quoting Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 2003-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 387, writ denied, 2004-0969 (La.6/25/04), 876 So.2d 834 and writ denied, 2004-0972 (La.6/25/04), 876 So.2d 834).
In this case, the record does not evidence whether the trial court made these preliminary determinations. No reasons for judgment were issued, and the record does not contain a transcript of the proceedings. Nevertheless, we find that the trial court committed legal error in dismissing A <& A’s suit in its entirety and referring the matter to arbitration, effectively failing to allow A & A’s claims against Chris Head individually and A & A’s tort claims against S & P to proceed in state court.
With regard to the breach of contract claims, A & A concedes in its appellate brief that those claims will properly proceed to arbitration because those are claims |7arising specifically out of the subcontract. A & A contends, however, that A & As additional claims regarding the demand of kickbacks and accompanying threats by Chris Head and A & A’s tort claims against S & P fall outside the scope of the arbitration agreement because those claims did not “arise out of’ the subcontract and should not have been referred to arbitration by the trial court. Specifically, A & A submits that although the subcontract provides that issues between A & A and S & P shall be submitted to arbitration, there is no written agreement whereby A & A and Chris Head agreed to arbitrate disputes between them. Likewise, A & A argues that the trial court erred in compelling arbitration of A & A’s tortious conduct claims against S & P, because those tort actions also fall outside the scope of the arbitration agreement.
“[Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” AT & T Technologies, Inc. v. Communications Workers of America., 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)(quoting United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 570-571, 80 S.Ct. 1363, 1364-1365, 4 L.Ed.2d 1432 (1960) (Brennan, J., concurring); see also Billieson v. City of New Orleans, 2002-1993, p. 6 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 561, writ denied, 2004-0563 (La.4/23/04), 870 So.2d 303. Likewise, “the duty to arbitrate is one assumed by contract.” Anthony G. Buzbee, When Arbitrable Claims Are Mixed with Nonarbitrable Ones: What’s A Court to Do?, 39 S. Tex. L.Rev. 663, n. 47 (1998)(citing AT & T Technologies, Inc., 475 U.S. at 648, 106 S.Ct. at 1418 (1986)); see also Kroll v. Doctor’s Associates, Inc., 3 F.3d 1167, 1169 (7th Cir.1993)(agreement to arbitrate between franchisor and plaintiff did not extend to franchisor’s employees who were not parties to the agreement). Accordingly, “parties who do not *369 choose to participate in an arbitration agreement are not bound by the agreement.” Buzbee, supra, at 673. Similarly, because the record does not evidence an agreement whereby A & A and Chris Head agreed to arbitrate issues between them, A & A cannot be forced to arbitrate its claims against Chris Head individually.
Furthermore, A & A contends that the arbitration provision was narrowly defined and did not provide that A & A and S & P agreed to litigate tort claims. A & A further submits that nothing in the subcontract bestows a right of action upon A & A to pursue an unfair trade practice claim. In Saavedra v. Dealmaker Developments, LLC, this Court recognized a broadly defined arbitration provision as one that encompassed “any and all claims, issues or disputes of any nature arising out of this contract in anyway [sic], to include claims under tort law, contract law, statutory law, or common law.” Saavedra v. Dealmaker Developments, LLC, 2008-1239, p. 8 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 764, writ denied, 2009-0875 (La.6/5/09), 9 So.3d 871 (emphasis added).[4] In contrast, the arbitration provision in this case is narrowly defined as governing any | ^controversy or dispute “relating to this Subcontract.” A & A’s tort claims at issue arise out of Chris Head’s alleged demands for kickbacks and unfair trade practices, as well as S & P’s alleged vicarious liability. Therefore, we agree that the arbitration provision is narrow in scope, and that A & A’s tort claims against Chris Head and S & P, as well as A & A’s vicarious liability claim against S & P, are not disputes “relating to th[e] subcontract” such that they are encompassed by the arbitration clause. See Saavedra v. Dealmaker Developments, LLC, 2008-1239, p. 8, 8 So.3d at 764; Snyder v. Belmont Homes, Inc., 2004-0445, p. 6, 899 So.2d at 62.
For the foregoing reasons, we find that the trial court committed legal error in compelling A & A to arbitrate its claims against Chris Head individually and its tort claims against S & P. While A & A’s breach of contract claims may properly proceed to arbitration, the remaining claims must be submitted to the trial court for a determination of those issues. The trial court’s judgment on S & P’s exception of prematurity is hereby reversed and the matter is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED

. A review of the record evidences that the subcontract provided that A & A would be paid $5,381,824.00. A & A submits that during the course of construction, A & A was also directed to perform over $500,000.00 in extra work, and that certain portions of these amounts are in dispute. However, A & A notes that the resolution of those claims is not at issue in this appeal and that the claims regarding these disputed amounts will proceed to arbitration.

. This case is procedurally distinguishable from Bolden v. FedEx Ground Package Sys., Inc., 2010-940 (La.App. 4 Cir. 2/16/11), 60 So.3d 679. In Bolden, a trial court’s judgment which granted the defendants' exception of prematurity and motion to stay and ordered the plaintiffs' claims to arbitration without dismissing the suit was determined to not be an appealable judgment. In concluding that tire judgment was interlocutory, this Court recognized that "[t]he judgment did not dismiss any party” and "[t]he judgment d[id] not even purport to dismiss some, much less all, of the claims of the plaintiffs.” Bolden, 2010-940, p. 3, 60 So.3d at 682 (emphasis in original). This case is also procedurally distinguishable from Collins v. Prudential Ins. Co. of Am., 1999-1423, p. 6 (La.1/19/00), 752 So.2d 825, 829, wherein the Louisiana Supreme Court found that an order staying the proceedings and compelling arbitration was not an appealable judgment because the trial court’s judgment "did not dispose of the merits of the case in whole or in part.”

. The following section, (ii), provides that "[i]n the event that Contractor determines that the dispute shall not be resolved through arbitration, then Subcontractor agrees that the disputes will be resolved by courts of competent jurisdiction in Harris County, Texas.”

. Similarly, in Snyder v. Belmont Homes, the First Circuit concluded that an arbitration provision which encompassed "any dispute, controversy or claim of any kind or nature that may arise” and "all past, present, and future disputes, whether in tort, contract or otherwise, concerning or related to the manufactured home” was broad in scope; therefore, the dispute fell within the arbitration clause:
If the court finds that the [arbitration] clause is broad, then any dispute between the parties falls within the scope of the clause if it is connected with or related to the contract. [See Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754-55 (5th Cir.1993).] A narrow clause restricts and requires that the dispute literally "arise out of the contract” and relate to the parties’ performance of the contract. Pennzoil [Exploration & Prod. Co. v. Ramco Energy Ltd.], 139 F.3d [1061,] 1067 [(5th Cir.1998)].
Snyder v. Belmont Homes, Inc., 2004-0445, p. 6 (La.App. 1 Cir. 2/16/05), 899 So.2d 57, 62, writ denied, 2005-1075 (La.6/17/05), 904 So.2d 699 (emphasis added).