| ERG ENTERPRISES, LLC, ET AL. | * | NO. 2019-CA-1104 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| GREEN COAST ENTERPRISES, LLC, ET AL. | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |

* * * * * * *

CONSOLIDATED WITH:

CONSOLIDATED WITH:

**ERG ENTERPRISES, LLC; GCE 234 LOYOLA LEVERAGED LENDER, LLC; GCE 234 LOYOLA, LLC; ERG PYTHIAN MANAGER, LLC; DR. ERIC R. GEROGE**

NO. 2020-C-0097

**VERSUS**

**GREEN COAST ENTERPRISES, LLC; WILLIAM B. BRADSHAW, II; ALEXANDER S. KELSO, JR.; GENE KELSO CASELLA 2000 SEPARATE PROPERTY TRUST AGREEMENT; & WILLOWEND INVESTMENTS, LLC**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-10185, DIVISION "I"
Honorable Piper D. Griffin, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge James F. McKay III, Judge Terri F. Love, Judge Dale N. Atkins)


C. Lawrence Orlansky
Nicholas J. Wehlen
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112—4042

AND

Steven J. Perfrement
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

> COUNSEL FOR PLAINTIFFS/APPELLANTS, ERGENTERPRISES, LLC; GCE 234 LOYOLA LEVERAGED LENDER, LLC; GCE 234 LOYOLA, LLC; ERG PYTHIAN MANAGER, LLC; & DR. ERIC R. GEORGE

Richard K. Leefe
Michael R. Gelder
LEEFE GIBBS SULLIVAN DUPRE' & ALDOUS, LLC
3900 North Causeway Boulevard
One Lakeway Center, Suite 1470
Metairie, LA 70002-7919

> COUNSEL FOR DEFENDANT/APPELLEE, GREEN COAST ENTERPRISES, LLC

Shaun Barkley Rafferty
SHAUN B. RAFFERTY LAW OFFICE LLC
812 GRAVIER STREET, Suite 360
New Orleans, LA 70112

> COUNSEL FOR DEFENDANTS/APPELLEES, GENE KELSO; CASELLI 2000 SEPARATE PROPERTY TRUST AGREEMENT; WILLOWEND INVESTMENTS; ALEXANDER KELSO, JR.; & WILLIAM B. BRADSHAW, II

**AFFIRMED**
**MAY 13, 2020**

*TFL JFM, DNA*

This appeal arises from a dispute regarding whether claims between the participants must be subject to arbitration. Plaintiffs and defendants were involved in a project to rehabilitate, develop, and operate a historic New Orleans building into a multi-use facility. A dispute arose regarding alleged mismanagement of the project, which spurned plaintiffs to file a lawsuit. Defendants contended the suit should be stayed pending arbitration, as mandated by one of the documents executed to govern the project. The trial court agreed and granted the motion to stay pending arbitration.

Plaintiffs appeal, asserting that the trial court erred because neither they nor their claims are subject to arbitration. After our review, we find that the trial court correctly found that plaintiffs and the suit were subject to the arbitration provision. As arbitration was required, plaintiffs were not entitled to a preliminary injunction preventing arbitration. The judgment of the trial court is affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A project to rehabilitate, develop, and operate a historic building into a mixed-use facility at 234 Loyola Avenue, New Orleans, Louisiana ("Pythian")

1

resulted in the establishment of limited liability companies and the confection of numerous contractual documents in order to complete the project while taking advantage of tax credits. An explanation of the intertwined entities is first required.

GCE 234 Loyola, LLC ("Owner") owns the Pythian. Owner consists of GCE 234 Loyola Leveraged Lender, LLC ("Leveraged Lender"); Gene Kelso Caselli 2000 Separate Property Trust Agreement ("Caselli Trust"); and Willowend Investments, LLC ("Willowend"). Leveraged Lender was created to handle tax issues arising from the project. Leveraged Lender has four members: William Bradshaw, II ("Mr. Bradshaw"); Alexander S. Kelso, Jr. ("Mr. Kelso"); ERG Enterprises, LLC ("ERG"); and Crescent City CLT I, LLC ("CCCLT"). Dr. Eric George is the founder and principal of ERG.

Green Coast Enterprises, LLC ("Green Coast") was appointed to act as manager for Owner and Leveraged Lender. The members of Green Coast are Mr. Bradshaw and Mr. Kelso.

Leveraged Lender secured a loan for the benefit of the project and entered into a Bridge Loan Agreement with the lender. As security for this loan, Green Coast, CCCLT, Mr. Bradshaw, Mr. Kelso, and Dr. George confected the Bridge Guaranty Agreement ("Guaranty"). In the event that the Guaranty was triggered, both the Operating Agreements of Owner and Leveraged Lender provided that Dr. George would have the right to appoint the manager of those entities. The loan went into default and Dr. George paid the Guaranty in full. Dr. George exercised his rights and appointed ERG Pythian Manager, LLC ("Manager") as the new manager of Owner and Leveraged Lender.

Green Coast, Mr. Bradshaw, Mr. Kelso, Caselli Trust, and Willowend filed a

2

demand for arbitration with the American Arbitration Association ("AAA") against ERG, Dr. George, and Manager (collectively, "Arbitration Respondents") based on an alleged breach of contract and seeking declaratory relief arising out of the Owner Operating Agreement, Leveraged Lender Operating Agreement, and the Guaranty. Arbitration Respondents filed an objection to arbitration. AAA found that the filing requirements were met as to ERG, but not as to Dr. George and Manager. The arbitration proceedings continued.

Then, ERG, Leveraged Lender, Owner, Manager, and Dr. George (collectively, "Plaintiffs") filed a Petition for Damages, Declaratory Relief, Injunctive Relief, and Accounting against Green Coast, Mr. Bradshaw, Mr. Kelso, Caselli Trust, and Willowend (collectively, "Defendants") seeking an injunction prohibiting arbitration,[1] damages for breaches of contract, breaches of fiduciary duty, and contribution. A First Amended and Restated Petition followed. Arbitration Respondents then filed a Motion for Preliminary Injunction against Defendants. Defendants followed by filing an Exception of Prematurity and a Motion to Stay Pending Arbitration.

Following a hearing, the trial court denied Arbitration Respondents' Motion for Preliminary Injunction and granted Defendants' Motion to Stay Pending Arbitration. Further, the trial court declared that Defendants' Exception of Prematurity was moot. Plaintiffs then filed a Motion for Devolutive Appeal, as well as Notice of Intent to seek supervisory review, of the trial court judgment.

On appeal,[2] Plaintiffs contend that the trial court erred by: 1) deferring the matters to arbitration, 2) concluding that the lawsuit and arbitration claims had to

---

[1] Arbitration Respondents were the only parties requesting injunctive relief in the Petition.
[2] Plaintiffs also filed an application for supervisory review with this Court, 2020-C-0097, of the same judgment.

3

proceed to arbitration, 3) denying the preliminary injunction and granting the stay, and 4) admitting affidavits that were irrelevant to the issue of arbitration.

## STANDARD OF REVIEW

"The denial of a preliminary injunction is reviewed under the abuse of discretion standard." *Jarquin v. Blanks*, 18-0157, p. 2 (La. App. 4 Cir. 8/15/18), 254 So. 3d 10, 11-12.

Conversely, "[a] determination regarding whether to stay or to compel arbitration is a question of law." *A & A Mech., Inc. v. Satterfield & Pontikes Const. Grp., LLC*, 11-0784, p. 3 (La. App. 4 Cir. 1/11/12), 83 So. 3d 363, 366. "Therefore, our standard of review is simply to determine whether the trial court was legally correct or incorrect." *Star Transp., Inc. v. Pilot Corp.*, 14-1228, p. 6 (La. App. 4 Cir. 6/24/15), 171 So. 3d 1195, 1199. Specifically, an appellate court "should consider *de novo* issues of law concerning whether the dispute was within the scope of the arbitration agreement, unless the parties also clearly agreed that the issue of whether a dispute was arbitrable was subject to arbitration." *A & A Mech.*, 11-0784, p. 3, 83 So. 3d at 366 (quoting *Collins v. Prudential Ins. Co. of Am.*, 99-1423, p. 7, n.11 (La. 1/19/00), 752 So. 2d 825, 830).

## ARBITRATION

Plaintiffs' first three assignments of error revolve around whether the trial court erred by finding that they were bound by the arbitration provision, that claims were subject to arbitration, and staying the matter pending arbitration. Namely, Plaintiffs contend that, as the Arbitration Respondents were not "members" or signatories to the Owner Operating Agreement, they cannot be forced to arbitrate.

"On review, a trial court's judgment which compels arbitration is reviewed

under the same two-prong test: 1) whether there is a valid arbitration agreement and 2) whether the dispute falls 'within the scope' of the agreement." *Bolden v. FedEx Ground Package Sys., Inc.*, 10-0940, p. 12 (La. App. 4 Cir. 2/16/11), 60 So. 3d 679, 686 (quoting *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 03-1662, p. 9 (La. App. 4 Cir. 3/17/04), 871 So. 2d 380, 388).

First, we must examine whether a valid arbitration agreement exists. The Louisiana Revised Statute provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

La. R.S. 9:4201. Further,

> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

La. R.S. 9:4202.

The arbitration clause at issue is contained in the Owner's Amended and Restated Operating Agreement ("Agreement") and provides as follows:

> 10.3 Dispute Resolution
>
> a. In the event of any other dispute under or arising out of this Agreement or the governance of the Company, the parties hereto agree to participate in good faith in a mediation of the dispute before a mediator as a precondition to the commencement of an arbitration or

5

legal action. In the event the parties are unable to agree on the selection of the mediator, a mediators elected by the American Arbitration Association in New Orleans, Louisiana, or its successor, shall serve as mediator. The mediation shall take place in New Orleans, Louisiana.

b. Any and all disputes, controversies or differences which may arise between the Members out of or in relation to or in connection with this Agreement not settled by mediation [pursuant to the preceding paragraph] shall be settled by arbitration in New Orleans, Louisiana. Unless the Members agree otherwise by Supermajority Vote, the arbitration shall occur in accordance with rules of the American Arbitration Association. The arbitration shall be before a single arbitrator selected by Supermajority Vote or, in case of a deadlock, by the rules of the American Arbitration Association. Each Member shall pay the costs of the arbitrator in proportion to his Shares. Each Member shall otherwise bear his own expenses for the arbitration. The award rendered by arbitration shall be final and binding upon the Company and the Members, and may be enforced in any court with jurisdiction over the objection of a Member.

Additionally,

10.4 *General*. This Agreement is to be binding upon, and inure to the benefit of the successors and permitted assigns of the Members and Manager. Article, section and paragraph captions and headnotes are for reference purposes only and will not be considered to affect context. If any part of this Agreement is found by a court of competent jurisdiction to be void, against public policy or otherwise unenforceable, the part shall be reformed by the court to the extent necessary to make such provision enforceable. If the entire provision is deemed unenforceable by the court, the provision shall be deleted. In either event, this Agreement and each of the remaining provisions of it, as so amended, shall remain in full force and effect.

Plaintiffs assert that because Arbitration Respondents are not "members" or signatories to the Agreement, then the clauses outlined above cannot be utilized to force them to arbitrate some of their claims. We disagree.

The Plaintiffs include ERG, Leveraged Lender, Owner, Manager, and Dr.

6

George. The "members" of the Agreement are listed as Leveraged Lender, Willowend, and Caselli Trust. ERG, Manager, and Dr. George are the nonsignatories. ERG is a member of Leveraged Lender (signatory). Dr. George, the principal of ERG, purports to be able to place Manager in charge of Owner and Leveraged Lender.

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Traders' Mart, Inc. v. AOS, Inc.*, 52,592, p. 8 (La. App. 2 Cir. 4/10/19), 268 So. 3d 420, 427. "Six theories for binding a nonsignatory have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Id.*

"'Direct benefit' estoppel applies when a non-signatory plaintiff sues to enforce a contract containing an arbitration agreement, yet seeks to avoid the arbitration provision in that same agreement." *Lakeland Anesthesia,* 03-1662, p. 20, 871 So. 2d at 394 (quoting *Greene v. Chase Manhattan Auto. Fin. Corp.*, 03-2179 (E.D. La. 2003), 2003 WL 22872102, *7). In other words, "[d]irect benefits estoppel involves nonsignatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Traders' Mart*, 52,592, p. 10, 268 So. 3d at 428. Further, "[a] nonsignatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.*, 52,592, p. 11, 268 So. 3d at 428 (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010)).

The Agreement contains the following clause relative to Dr. George and

7

ERG:

>7.1 Guaranty. Contemporaneous with the signing of this Agreement, Dr. Eric George and/or ERG (collectively referred to as "George") has entered in to those certain guarantees for loans made to, and for the benefit, of the Company, dated November 6, 2015 (collectively, the "Guaranty"). In the event that there is a call on the Guaranty, and George satisfies all or a portion of his obligation under the Guaranty, the Guarantor shall have certain rights that supersede other provisions of this Agreement as follows;

>a. Removal of the Manager. George may remove and replace the Manager without the requirement of a Supermajority Vote.

>$*$　　　$*$　　　$*$

>d. Limitation on Distributions. George may direct the Manager to suspend all quarterly distributions, and direct the amount of distributions to the George until the Loan is repaid.

The Agreement also outlines the responsibilities of the manager. Plaintiffs filed suit to enforce these provisions, as well as alleging breaches of obligations established in the Agreement.

We find the present matter warrants application of the direct benefit estoppel doctrine as detailed in *Lakeland Anesthesia* and *Traders' Mart*. Arbitration Respondents filed suit to enforce and benefit from the Agreement, but are now seeking to avoid the binding arbitration provision. As stated in *Lakeland Anesthesia* and *Traders' Mart*, a nonsignatory cannot litigate to reap benefits from a contract and then attempt to avoid an arbitration provision contained therein. *Lakeland Anesthesia*, 03-1662, p. 20, 871 So. 2d at 394; *Traders' Mart*, 52,592, pp. 10-11, 268 So. 3d at 428.

Next, we must examine whether the dispute is within the scope of the arbitration provision. As outlined above, the Agreement provides that "[a]ny and

all disputes, controversies or differences which may arise between the Members out of or in relation to or in connection with this Agreement not settled by mediation . . . shall be settled by arbitration in New Orleans, Louisiana." The dispute involves "members" and non-members, and the claims concern the governance, as well as alleged breaches of duties outlined in the Agreement. As such, we find that the dispute falls within the scope of the provision. Even if some claims fall outside the scope of the arbitration provision, the claims are intertwined such that it should be sent to arbitration. *See Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 11-0881, p. 8 (La. App. 4 Cir. 12/14/11), 82 So. 3d 473, 478 ("We, . . . do not find that the trial court abused its discretion in applying the equitable estoppel doctrine to find that the claims against defendants are so intertwined with and dependent upon the subcontract that they must be sent to arbitration as well.")

"[T]he United States Supreme Court has set forth a presumption of arbitrability." *Bolden*, 10-0940, p. 16, 60 So. 3d at 689. "Generally, any doubt should be resolved in favor of arbitration." *A & A Mech.*, 11-0784, p. 5, 83 So. 3d at 367. Moreover, as the Louisiana Supreme Court explained,

> even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.

*Aguillard v. Auction Mgmt. Corp.*, 04-2804, p. 25 (La. 6/29/05), 908 So. 2d 1, 18.

Accordingly, we find that the trial court[3] did not err by staying the matter pending arbitration.

## *PRELIMINARY INJUNCTION*

Plaintiffs contend that the trial court erred by denying Arbitration Respondents' Motion for Preliminary Injunction seeking to enjoin arbitration.

In order to be granted a preliminary injunction, "an applicant must establish by *prima facie* evidence that: (1) the injury, loss, or damage suffered in absence of injunction may be irreparable; (2) entitlement to relief sought; and (3) prevailing on the merits of the case is likely." *Jarquin*, 18-0157, p. 3, 254 So. 3d at 12.

As we found above that the trial court was legally correct in determining that the matter was subject to arbitration and staying the proceedings pending arbitration, the trial court did not abuse its discretion by denying the Motion for Preliminary Injunction.

## *AFFIDAVITS ADMITTED INTO EVIDENCE*

Plaintiffs lastly contend that the trial court erroneously permitted Defendants to admit the affidavits of Mr. Bradshaw and Mr. Kelso into evidence in opposition to the Motion for Preliminary Injunction and in support of the Motion for Stay. Plaintiffs assert that the affidavits almost wholly contain information relating to the merits of the claims between the parties as opposed to information regarding whether arbitration is required. Plaintiffs cite no statute or jurisprudence for this conclusion.

"A trial court's determinations regarding what evidence is admissible for the trier of fact to consider will not be overturned absent clear error." *Oddo v.*

---

[3] Plaintiffs contend on appeal that the trial court erred in her reasoning in the transcript. However, "the district court's oral or written reasons for judgment form no part of the judgment, and . . . appellate courts review judgments, not reasons for judgment." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671.

*Asbestos Corp. Ltd.*, 14-0004, p. 37 (La. App. 4 Cir. 8/20/15), 173 So. 3d 1192, 1216. The factfinder in the present matter was the trial court judge. As such, she was in the best posture for reviewing and weighing evidence. We do not find the trial court erred by admitting the affidavits.

## *DECREE*

For the above-mentioned reasons, we find that the Plaintiffs are subject to the arbitration provision contained in the Agreement based on the doctrine of direct benefit estoppel. We also find that the dispute falls within the scope of the arbitration provision and is inexorably intertwined. Accordingly, we find that the trial court correctly granted Defendants' Motion to Stay Pending Arbitration. Having found that arbitration is proper, we also hold that Arbitration Respondents were not entitled to a preliminary injunction to prevent arbitration. Lastly, the trial court did not err by admitting the affidavits. The judgment of the trial court is affirmed. We dismiss Plaintiffs' writ as moot.

**AFFIRMED**

11