JOY COSSICH LOBRANO, Judge.
1 defendant, Penson Financial Services, Inc. (“Penson”), appeals a district court judgment confirming an arbitration award rendered in favor of Emmett E. Carter, Jr. (“Mr. Carter”).[1] For the reasons that follow, we affirm.
*562 In January 2006, Mr. Carter retired from ExxonMobil, after thirty-five years of service at its refinery in Baton Rouge. In addition to stock, Mr. Carter received a lump sum retirement distribution of $513,544.00 from the ExxonMobil Retirement Plan as well as $595,000.00 from the ExxonMobil Savings Plan for employees. On the advice of James R. Holdman (“Mr. Holdman”), a licensed security broker and registered representative of Electronic Access Direct, Inc. (“E.A. Direct”), a financial securities firm, Mr. Carter set up an Individual Retirement Account (“IRA”) and invested the retirement money in two hedge funds (“the Wing Funds”) managed by Mr. Holdman. Penson, a “clearing broker,” provided ministerial services for E.A. Direct, which included processing the fund manager’s trade instructions, i.e., buying and selling securities, and preparing 12monthly statements for investors. Pen-son also served as custodian of Mr. Carter’s IRA.
After E.A. Direct went out of business in 2007, Mr. Holdman became a registered representative of NWT Financial Group, LLC (“NWT”), but continued to manage the Wing Funds. Penson remained the clearing broker for NWT and the custodian of Mr. Carter’s IRA. Both Penson and Mr. Holdman sent monthly statements to Mr. Carter reporting the status of his investments. Despite the declining financial markets, the monthly statements indicated Mr. Carter’s investments were either stable or increasing in value. Nonetheless, in October 2008, Mr. Carter received a notice from Mr. Holdman that the values of the Wing Funds had plummeted, resulting in a substantial loss of his investments.
In July 2009, Mr. Carter filed a “Statement of Claim” with the Financial Industry Regulatory Authority (“FINRA”), asserting causes of action against Mr. Holdman, NWT, Penson and others[2] for breach of contract, breach of fiduciary duty, negligence, fraud, and violations of Louisiana securities laws. He requested compensatory damages in excess of $1,000,000.00, exemplary damages, and attorney’s fees. Mr. Holdman, NWT, and Penson answered the claim, denying the allegations.
Pursuant to the FINRA Arbitration Submission Agreement executed by the parties[3], the matter was submitted to a three member arbitration panel for 1 ^resolution. Following a hearing, the panel rendered a 2-1 decision, holding Penson, NWT and Mr. Holdman jointly and severally liable, and awarded Mr. Carter compensatory damages of $851,368.74, expert witness fees of $17,798.50, and legal interest from the date of filing the claim. In written reasons, the dissenting arbitrator opined that the award should not exceed $700,000.00, Mr. Carter should share some responsibility, and the market conditions contributed to Mr. Carter’s financial losses.
Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and the Louisiana Binding Arbitration Law, La. R.S. 9:4201, et seq., Mr. Carter filed a petition in the district court to confirm the arbitration award. Penson, on the other hand, filed a *563 motion to vacate the award,-asserting that (1) the arbitration panel manifestly disregarded the law of causation by awarding Mr. Carter his total damages despite undisputed evidence that the declining stock market contributed to his losses; and (2) the arbitration panel disregarded Texas law[4] (the law applicable to the dispute), by holding the responsible parties jointly and severally liable rather than apportioning fault among them. Following a hearing, the district court rendered the judgment confirming the award.
Arbitration is a substitute for litigation. The purpose of arbitration is the settlement of differences in a fast, inexpensive manner before a tribunal of the | parties’ choice; this purpose is defeated when participants seek judicial review of an arbitration award. Johnson v. U25 Dauphine, L.L.C., 2010-0793, p. 7 (La.App. Cir.12/1/10), 52 So.3d 962, 967, writ denied, 2011-0001 (La.2/18/11), 57 So.3d 334 (Citation omitted). Pursuant to La. C.C. arts. 3099, et seq., and La. R.S. 9:4201, et seq., arbitration is favored in Louisiana. Dicarte v. Landrieii, 2008-0249, p. 3 (La.App. 4 Cir. 9/10/08), 993 So.2d 799, 801. Therefore, arbitration awards are presumed to be valid. Id. (Citing American LifeCare, Inc. v. Wood, 2002-1354, p. 5 (La.App. 4 Cir. 8/28/02), 826 So.2d 646, 649).
Errors of fact or law do not invalidate an arbitration award. Montelepre v. Waring Architects, 2000-0671, 2000-0672, p. 4, (La.App. 4 Cir. 5/16/01), 787 So.2d 1127, 1130. Because the parties must agree to arbitration, they are presumed to accept the risk of procedural and substantive mistakes of either fact or law. Id. at p. 5, 787 So.2d at 1130 (citation omitted). Therefore, an arbitration award must be confirmed by the trial court unless statutory grounds for vacating it exist. Id. at p. 4, 787 So.2d at 1130 (citation omitted). The burden of proof is on the party attacking the award. Id. (Citations omitted).
La. R.S. 9:4210 sets forth the sole grounds for vacating an arbitration award, which are:
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any |fiother misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
In the instant case, Penson argues that the majority arbitrators “exceeded their powers” and manifestly disregarded the law by failing to consider evidence that the declining stock market contributed to Mr. Carter’s losses. Penson contends that it presented the arbitration panel with un-controverted evidence that the Dow Jones Industrial Average, i.e., the stock market index, declined by 19.2% during the period that Mr. Carter invested with Mr. Hold-man. Penson points out that.even if Mr. *564 Carter had never invested funds with Mr. Holdman, his holdings still would have declined by a comparable amount and therefore his claimed damages, at the very least, should be discounted.
Penson also argues that the majority arbitrators, by holding the defendants jointly and severally liable, disregarded Tex. Civ. Prac. & Rem. § 38.013[5], which bars joint and several liability unless a party is more than 50% responsible for damages. Penson contends that given the evidence the arbitration panel could not have found it more than 50% responsible for Mr. Carter’s damages.
|fiWe find no merit to Penson’s arguments. The record indicates the arbitration panel was presented with undisputed evidence that the stock market declined 19.2% between January 2006 and December 2008. Nonetheless, Mr. Carter testified that although he had informed Mr. Holdman that he did not want to invest his retirement money in “risky” investments, Mr. Holdman had assured him that hedge funds perform well in “up or down” markets, and would make money either way. Mr. Carter also presented evidence that the monthly statements Penson and Mr. Holdman sent to him were false and misleading. According to Mr. Carter, if he had known the statements were false, then he would have withdrawn his money from the hedge funds well before the market crashed in September 2008. Expert witness Nicholas Vu, a financial analyst, verified that Mr. Carter could have withdrawn his money from the hedge funds prior to November 2007, without sustaining a net loss, had he known the actual value of the funds. James Lenaghan, an expert on IRAs, testified that Penson, as the IRA custodian, had a fiduciary duty to annually report the value of each hedge fund to Mr. Carter.
The evidence clearly supports the arbitration panel’s majority decision. The fact that the dissenting arbitrator would have attributed some liability to Mr. Carter and reduced the total damages, given the evidence of the stock market decline, is not a basis under La. R.S. 9:4210 for vacating or modifying the arbitration award. Moreover, nothing in the record indicates that the arbitration panel failed to apply Texas law as required under the terms of the Penson Customer Service Agreement. Regardless, errors of fact or law do not invalidate an arbitration agreement. See Montelepre, supra.
^Because Penson has failed to satisfy its burden of proving a statutory basis under La. R.S. 9:4210 to vacate or modify the arbitration award, we find no error in the district court judgment confirming the award.
Accordingly, the district court judgment is affirmed.
AFFIRMED

. After the death of Mr. Carter on May 2, 2011, his surviving spouse, Patricia R. Carter, *562 was substituted as the plaintiff/appellee in this matter.

. Mr. Carter asserted claims against Leslie M. Hausse, a licensed security broker and NWT agent who occasionally advised him, as well as Scott D. Johnson, a securities trader. Mr. Carter settled his claims against Mr. Hausse and Mr. Johnson prior to the arbitration hearing.

. The record indicates that Mr. Holdman did not sign the FINRA Arbitration Submission Agreement, but consented to arbitration as a condition of maintaining a securities industry registration and license.

. The Penson Customer Service Agreement signed by Mr. Carter provided:
15. Miscellaneous ... This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you ... and any and all previous, current and future transactions in such accounts.

. Tex. Civ. Prac. & Rem. § 33.013, provides, in pertinent part:
§ 33.013. Amount of Liability
(a) Except as provided in Subsection (b), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant’s percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.
(b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012 with respect to a cause of action if:
(1) the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than 50 percent;