PAUL A. BONIN, Judge.
[jTwo petroleum producing companies, Matador Resources Company and Goodrich Petroleum Company, LLC, entered multi-faceted, agreements by which they could elect to jointly engage in oil explora *202 tion projects. The prominent feature, for our purposes, of those agreements was the parties’ broad and unconditional agreement to submit any and all disagreements they might have with each other to binding arbitration. The parties agreeably submitted their disagreement over how to calculate contributions under the Louisiana Risk Fee Statute on three wells. By further agreement, they agreed to submit their disputed contentions to three attorneys who are well-respected in the field of mineral law, subject to returning to arbitration in the event of any follow-up accounting disputes, which the parties did not anticipate.
The arbitrators decided the interpretation or application of the Risk Fee Statute favorably to Goodrich. Subsequently, as best as we can determine from this very limited record, Goodrich began to claim credits in the accounting process for certain of its previous contributions, to which Matador objected. Matador |2contended that Goodrich was not entitled to the claimed credits because of an agreement between them not based upon or related to the Risk Fee Statute matter. Thus, Matador submitted the dispute to the same arbitrators who, over the initial objections of Goodrich, agreed that they would consider the issues raised by Matador. This time the arbitrators ruled favorably for Matador.
Litigation was commenced in the district court concerning the arbitrators’ awards. Both parties were agreeable to the confirmation of the decision on the application of the Risk Fee Statute, and that matter is not before us. While Matador sought the confirmation of the arbitrators’ so-called second award, however, Goodrich sought to vacate and annul it on the statutory ground that the arbitrators exceeded their authority. The district judge vacated the second award in favor of Matador; Matador now appeals.
After our de novo review of the matter, we conclude that the district judge was legally incorrect in concluding that the arbitrators exceeded their authority to arbitrate the dispute that arose during the accounting process following the initial Risk Fee Statute award. Accordingly, we reverse the district court’s judgment, and confirm the arbitrators’ award in favor of Matador.[1] We explain our decision in considerably greater detail below.
I
At the outset of our detailed explanation, we emphasize that we begin with the important premise that arbitration awards are presumed to be valid. See Dicorte |3 v. Landrieu, 08-0249, p. 3 (La.App. 4 Cir. 9/10/08), 993 So.2d 799, 801. A district court may not vacate an arbitrators’ award unless specifically authorized by statute. See La. R.S. 9:4210. An arbitration award, therefore, must be confirmed by a district court unless statutory grounds for vacating the award exist. See Johnson v. 1425 Dauphine, L.L.C., 10-0793, p. 7 (La.App. 4 Cir. 12/1/10), 52 So.3d 962, 967.
We also importantly note that throughout our discussion, and especially when we are describing factual and legal issues submitted to and decided by the arbitrators, we do not imply or suggest that we have considered the merits of the parties’ disputes beyond the discrete legal issue presented to us in this appeal, which is whether the arbitrators exceeded their powers. By consensually substituting ar *203 bitration for litigation, the parties are presumed to accept the risk of procedural and substantive mistakes of either fact or law by the arbitrators, which mistakes are not reviewable by the courts. Id.
II
In this Part we describe the parties’ relationship and their agreements, the nature of their disputes, and the procedural developments before the arbitrators and the district court.
A
Matador decided in 2008 to induce another producer to help it jointly develop several Caddo Parish mineral leases in its Central Pine Island Prospect. |4Goodrich accepted Matador’s offer later that year.[2] The parties then entered into two, interrelated contracts: a Participation Agreement and a Joint Operating Agreement. Neither the Joint Operating Agreement nor the four exhibits attached to the Participation Agreement are in the record before us. We understand, however, that the two contracts are substantially similar, and we note that the Participation Agreement provides that its provisions govern and control in the event that there is a conflict between the two documents.
Significantly, the Participation Agreement, which is dated June 8, 2008, provides that Matador was obligated to commence operations on an initial test well on or before June 1, 2008. On the other hand, Goodrich, upon its execution of the Participation Agreement, agreed to make several payments to Matador, one of which comprised seventy-five percent of the estimated costs to drill the initial test well. Thereafter, the parties agreed to split equally future costs attributable to the initial test well. After completion of the initial test well, Matador agreed to assign fifty percent of its interest in the well to Goodrich.
With respect to subsequent wells, the Participation Agreement allows either party to propose subsequent wells in a section and afforded Goodrich the option to participate in these wells on a fifty percent working interest on a section by section basis. Should it elect to participate in a well, Goodrich agreed to pay Matador a Lease Bonus of $1000.00 per net mineral acre, proportionately reduced to fifty percent of Matador’s net mineral acreage leased per section. With each well I,^proposal covering the first subsequent well in a section, Matador was obligated to inform Goodrich as to those leases in the lease schedule, which is not made a part of the record before us, reflecting the net mineral acreage requiring a Lease Bonus payment. Goodrich was obligated to pay the Lease Bonus on a section by section basis within five days prior to the start date of drilling the first subsequent well in a section. After completion of the first subsequent well in each section, Matador would assign fifty percent of its interest in its mineral leases in that section to Goodrich. The assignment was to be made according to the same terms applicable to the initial test well. The Participation Agreement further notes that Goodrich could earn no other acreage or mineral interest in these leases except by paying the lease bonus and drilling of the first subsequent well in a section.
The Participation Agreement further provided for the establishment of an Area of Mutual Interest within the Central Pine Island Prospect upon completion of the initial test well. Within the Area of Mutual Interest, the parties granted each other *204 the right, but not the obligation, to acquire a fifty percent interest in all interests renewed or that may thereafter be acquired by the parties. The Area of Mutual Interest was to exist for a period of two years following the completion of the initial test well, although the Participation Agreement afforded the parties the option of terminating the Area of Mutual Interest upon their mutual agreement.
Additionally, the Participation Agreement provided, as we emphasized above, that any and all controversies or claims arising out of, or relating to, the Participation Agreement would be submitted to final and binding arbitration [ ^pursuant to the Commercial Rules of the American Arbitration Association. The parties also agreed that any party requesting arbitration must give formal written notice of the party’s demand for arbitration.
Subsequent to the execution of the Participation Agreement, an initial test well and three subsequent wells were completed in three different sections of the Area of Mutual Interest. Later, an unnamed producer, who owned a mineral lease in the vicinity of the disputed wells, asked the Louisiana Commissioner of Conservation to create a drilling unit encompassing the wells. This third party producer did not, however, agree to pay its share of drilling, equipping, and completing the well. Matador then sought to take advantage of La. R.S. 80:10, Louisiana’s Risk Fee Statute, which, according to the arbitrators first decision, “is designed to deal with the situation created when one party having property in a mineral unit declines to pay its share of the costs of drilling, equipping, and completing a well on the unit.”
Accordingly, and pursuant to the terms of the Risk Fee Statute, Matador paid for the share of the well expenses allocated to the third party’s tract, and charged those payments to the joint account set up pursuant to the terms of the Joint Operating Agreement. Because it was concerned that it would be unable to fully recoup those costs attributable to the third party’s tract, or the fee to which it was entitled under the Risk Fee Statute, out of the share of production attributable to the third party, Matador asserted that Goodrich should be required to bear one-half |7of the costs attributable to the third party’s tract. Goodrich disagreed, and Matador made a formal written request for arbitration.
B
The matter was submitted to a panel of arbitrators comprised of M. Hampton Carver, Charles R. Minyard, and John M. Wilson; they are all well-respected attorneys who have practiced in the highly specialized field of mineral law. The resulting decision noted that it was initially decided, by agreement of the parties and the arbitrators, that the matter would be bifurcated.
The arbitrators would first decide the issue of whether Goodrich had liability for costs pursuant to the Risk Fee Statute. The parties expressed the view to the arbitrators that they expected to easily resolve any accounting issues based upon the arbitrators decision, but agreed to reserve accounting and ancillary issues for future consideration by the panel if necessary.
The parties also agreed that because there were no real factual disputes, the arbitration hearing on liability could proceed in the same manner as cross-motions for summary judgment. The parties filed briefs, submitted exhibits and presented oral arguments before the arbitrators.
The arbitrators issued their initial decision on June 27, 2012. After reviewing the pertinent facts and provisions of the Risk Fee Statute, the majority of the panel *205 concluded that Matador inappropriately charged the expenses of the third party’s tract to the Matador/Goodrich joint operating account with the expectation that Goodrich would bear one-half of those expenses because Goodrich, according | «to the facts in the record and provisions of the Risk Fee Statute, never acquired an interest in the production attributable to the third party’s tract. The majority decision notes that the Participation Agreement provides that “the Parties will have the right, but not the obligation, to acquire a 50% interests in all interests ... that may hereafter be acquired” in the Area of Mutual Interest. The decision further notes that: 1) Goodrich was aware at the time that Matador had acquired the third party’s ownership of production; 2) Matador discussed offering a fifty percent interest in that ownership to Goodrich, though such an offer was never made; and 3) Goodrich never acquired a fifty percent interest in the third party’s interest. Therefore, the majority of the panel concluded that Goodrich was not obligated to bear fifty percent of the expenses for the drilling, completing, and equipping of the wells in question that are attributable to the third party’s tract because to hold otherwise would vitiate Goodrich’s acquisition of interests option within the Area of Mutual Interest as provided for in the Participation Agreement.
On August 9, 2012, counsel for Matador wrote to the panel members informing them that it and Goodrich were able to successfully work out most of the accounting issues between the parties. Counsel noted, however, that the parties were unable to agree upon the accounting for one of the wells. Specifically, counsel wrote that the E & L Development Co. # 1 well was unique from the other wells at issue because it was drilled as a lease well, rather than a unit well. Further, Matador claimed that Goodrich received an assignment for its fifty percent interest in this well before an application was made by the third party to establish a | ¡¡unit. Matador asserted to the panel that Goodrich was improperly attempting to reduce their original fifty percent cost obligation in the E & L Development Co. # 1 well through application of the Risk Fee Statute. Accordingly, Matador asked the panel to resolve the remaining accounting issue. Goodrich, by way of correspondence, objected to the panel reconvening and addressing Matador’s concerns.
Subsequently, the panel accepted briefs from the parties regarding Matador’s request and held an additional hearing on October 30, 2012. The panel rendered a second decision on December 19, 2012. Specifically, the decision addressed four issues: 1) whether the panel is foreclosed from considering Matador’s concerns by the conclusive effect of the initial decision of June 27; 2) whether Goodrich is entitled to recoup by offset payments made to Matador for well, completion, and lease acquisition costs relating to the E & L well given that the non-participating third parties whose acreage was encompassed within the unit refused to participate in the well; 3) whether Goodrich is obligated to pay for additional leased acreage in Section 15; and 4) who should pay the attorney’s fees and costs for the proceeding relating to the new issues.
We momentarily digress to express the firm view that, on account of the parties’ broad contractual provisions respecting reference of any and all disputes to arbitration, all of the issues to be addressed were arbitral issues. First, we reiterate the well-settled principle that all doubts as to whether an issue is referable to arbitration are to be resolved in favor of arbitration. See Aguillard v. Auction |10 Management Corp., 04-2804, 04-2857, p. *206 8 (La.6/29/05), 908 So.2d 1, 8; and Bolden v. FedEx Ground Package System, Inc., 10-940, p. 11 (La.App. 4 Cir. 2/16/11), 60 So.3d 679, 686. Second, we also observe that the Participation Agreement’s arbitration clause is broad and all-encompassing: “Both Parties agree that any and all controversies or claims arising out of or relating to this Agreement ... will be submitted to final and binding 30-day arbitration.” This provision does not envision a limited use or one-time use of arbitration. See, e.g., Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc., 97-1672, pp. 5-6 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, 556-557. Rather, it clearly provides for the repeated use of arbitration proceedings to resolve “any and all” disputes that might arise between the parties. See Lorusso v. Landrieu Enterprises, Inc., 02-2346, p. 5 (La.App. 4 Cir. 5/21/03), 848 So.2d 656, 659 (noting that a determination that a contract is valid will necessarily suffice to require enforcement of the arbitration clause in eases where the parties have contracted to submit all disputes to arbitration). Finally, the arbitrability of an issue is a legal matter to be decided by the courts of this state. See Bolden, 10-0940, p. 10, 60 So.3d at 685; Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 03-1662, p. 12 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 389 (citations omitted) (“a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court”).
The panel first concluded that it was empowered to arbitrate the issues raised by Matador. With respect to the second issue, two of the three panel members In agreed that Goodrich was not entitled to recoup from Matador payments previously made in connection with its receipt of an assignment of a fifty percent interest in the E & L well from Matador prior to the well’s unitization.[3] The third issue, which the panel noted was not fully developed by the parties at the October 30, 2012, hearing, concerned Goodrich’s liability for Lease Bonus payments under the Participation Agreement for several parcels of additional acreage in the section where the E & L well is situated. The panel ordered Goodrich to pay Matador for these assignments after concluding that Goodrich had already elected to participate in two of the parcels. Lastly, the panel ordered Goodrich to pay all expenses and fees incurred in connection with the new proceeding.
C
On March 4, 2013, Goodrich filed a Petition to Confirm Arbitration Award, and to Vacate or Declare Subsequent Arbitration Award a Nullity in the Civil District Court of Orleans Parish. Specifically, Goodrich sought a ruling that both confirmed the June 27 award and vacated the December 19 award and filed a motion on these grounds shortly thereafter. In response, Matador filed an Exception of No Cause of Action, Affirmative Defenses, and Answer to Goodrich’s petition on April 22, 2013. Significantly, Matador did not contest Goodrich’s attempt to confirm the June 27 award, but sought, instead, to confirm the December 19 award.
ImThe parties argued the merits of their competing motions before the district judge on June 14, 2013. At the close of the hearing, the district judge ruled for Goodrich and confirmed the June 27 award and vacated the December 19 award. The district judge concluded that the arbitrators exceeded their authority because the *207 December 19 award impermissibly modified the June 27 award. Following rendition of the written judgment, Matador filed a petition for suspensive appeal.
Ill
At this point we consider the standards by which a district court decides whether to confirm or vacate an arbitration award and by which we review the district court’s ruling.
A district court’s review of an arbitration award is extraordinarily narrow. See FIA Card Services, NA. v. Smith, 44,923, p. 7 (La.App. 2 Cir. 12/22/09), 27 So.3d 1100, 1106. A reviewing court may neither substitute its own judgment for that of the arbitrator nor review the merits of an arbitration award. See Southern Tire Services, Inc. v. Virtual Point Development, Inc., 00-2301, p. 4 (La.App. 4 Cir. 9/26/01), 798 So.2d 303, 306.
An appellate court makes a de novo review of a district court judgment confirming or vacating an arbitration award. See FIA Card Services, 44,923, p. 7, 27 So.3d at 1106; Detraz v. Banc One Securities Corp., 13-191, p. 5 (La.App. 3 Cir. 10/9/13), 123 So.3d 875, 878-879; Crescent Property Partners, LLC v. American Mfrs. Mut. Ins. Co., 13-661, 13-662, 13-663, p. 2 (La.App. 4 Cir. 2/28/14), 134 So.3d 85, 88-89; ConstructionSouth, Inc. v. Jen kins, |13 12-63, p. 7 (La.App. 5 Cir. 6/28/12), 97 So.3d 515, 520; and Brown v. Witco Corp., 340 F.3d 209, 216 (5th Cir.2003). A district court’s ruling on the confirming or vacating an arbitration award, therefore, is a legal issue. Review of questions of law is simply to determine whether the trial court was legally correct or incorrect. See Bolden, 10-0940, p. 10, 60 So.3d at 685. Thus, we give no deference to the district court’s decision on a matter of law.
IV
The burden of proof is on the party attacking the arbitrators’ award. Carter v. Holdman, 11-1473, p. 4 (La.App. 4 Cir. 5/23/12), 95 So.3d 560, 563. Thus we turn now to address Goodrich’s arguments why the arbitrators’ second award was correctly vacated by the district judge because “the arbitrators exceeded their powers.” La. R.S. 9:4210 D.[4]
A
Goodrich argues that the second award contravened the codal proscription that “[t]he arbitrators having once given their award, can not retract it nor change 114anything in it.” La. Civil Code art. 3131. We view this argument from two different perspectives in this case. First, reading Article 3131 in pari materiae with Article 3132(3), we consider that under these facts the first award was not a “final award”: *208 “The submission and power given to the arbitrators are put at an end by one of the following causes: ... [b]y the final award rendered by the arbitrators.” La. Civil Code art. 3132(8). This is because in this case the parties and the arbitrators by agreement allowed the arbitration proceeding to remain open for further submissions in the event a dispute or difficulty arose from the arbitrators’ decision on the Risk Fee Statute. Neither the parties nor the arbitrators considered that the arbitrators’ work was done merely because they had decided how to apply the Risk Fee Statute to the parties’ dispute. The other perspective is that Goodrich cannot demonstrate that the two awards are mutually exclusive or necessarily contradictory such that the arbitrators’ decision on the Risk Fee Statute was in any way “retracted” or “changed.”[5] Indeed Matador has no objection whatsoever to accepting the Risk Fee Statute decision and abiding by the arbitrators’ determination, and Goodrich concedes that the two outcomes could have been reached without internal contradiction if the disputes would have been presented in a single arbitration proceeding.
B
Goodrich also suggests that the first arbitration hearing was intended to conclusively dispose of all liability-related issues then existing between the parties. 11fiIt, therefore, implies that Matador should have brought all of its possible claims for arbitration at the same time or in the same proceeding as is required in civil litigation. See La. R.S. 13:4231 (res judicata effects “for all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation”); La. C.C.P. art. 425 A (“A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.”).
But we reject this argument for two reasons.
First, a primary purpose of substituting arbitration for litigation is to eschew or avoid the highly technical rules of civil procedure. See Haase Construction Co., Inc. v. Strohmeyer, 98-2967, p. 5 (La.App. 4 Cir. 6/23/99), 738 So.2d 152, 155 (noting, “[w]e must bear in mind that a primary purpose of arbitration is a rejection of civil procedure.”). “One of the basic reasons for the existence of arbitration agreements is to allow the parties to achieve speedy settlement of their differences out of court.” Regions Bank v. Weber, 10-1169, p. 7 (La.App. 4 Cir. 12/15/10), 53 So.3d 1284, 1289, quoting Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280, 283 (La.1974). Arbitration is designed to be fast and inexpensive before a tribunal of the parties’ choice. See Johnson, 10-0793, p. 7, 52 So.3d at 967. Thus, in the absence of statutory or agreed to procedures, the arbitrators have broad discretion in conducting the proceedings. See Hennecke v. Canepa, 96-0772, p. 3 (La.App. 4 Cir. 5/21/97), 700 So.2d 521, 522. And as a consequence arbitration proceedings are not held to the same strict rules as are the courts. See | mHaase, 98-2967, p. 3, 738 So.2d at 154. It would be counter-productive to apply the stringent civil procedure rules of issue preclusion and res judicata to arbitration proceedings, especially when, as here, the parties are engaged in a course of continuous dealings.
The second reason why we reject this argument is that it defies the parties’ own agreements. The parties did not restrict *209 themselves to seeking arbitration only once; they provided that any and all disputes were to be submitted to arbitration. And, of course, no submission could be made until at least one of the parties became dissatisfied with the other. Here the arbitrators in the exercise of their broad discretion were not required to thwart relief to a party through the application of the principles of issue preclusion and res judicata. The arbitrators were apparently well-satisfied that the dispute about Goodrich’s post-award accounting was sufficiently intertwined with the earlier, not-yet-terminated arbitration proceeding that further proceedings were in order. Goodrich, in fact, points to no provision of the parties’ agreements which prohibit the submission of those disputes to the arbitrators.
C
In this section we explain our conclusion that the district judge erroneously vacated the second award after concluding that its issuance impermissibly modified the first award. Observing that the majority panel members on the second award were engaged in “semantic gamesmanship,” the district judge concluded that the second award modified the terms of the first award because it [ 17revisited “the question of the costs associated with one of the three disputed wells considered in the original arbitration award.” This conclusion is legally erroneous and unsupported by our reading of the two awards and the record. Our reading of the awards indicates that they are intertwined but not so interconnected that the issuance of the second award changes or modifies the first. See FIA Card Services, 44,923, p. 7, 27 So.3d at 1106; and Southern Tire Services, 00-2301, p. 4, 798 So.2d at 306.
While we are constrained from reviewing the arbitration awards for substantive correctness, our reading of the first award indicates that it was solely concerned with Goodrich’s liability for well completion costs pursuant to the Risk Fee Statute. Goodrich lacked liability for the third party’s share of costs because the panel concluded that it had acquired no interests in the third party’s share of production. The second award, on the other hand, touches on Goodrich’s liability for Lease Bonus payments and whether Goodrich was entitled to recoup from Matador payments previously made in connection with its receipt of an assignment of a fifty percent interest in the E & L well from Matador prior to the well’s unitization. According to the panel, Goodrich’s liability for these payments flows from its acquisition of lease interests from Matador. Clearly, the results provided by the two awards flow from different aspects of the parties’ mutual financial relationship. Thus, while both addressing financial relations between the parties, the awards differ substantially such that enforcement of the second award will not impinge upon the enforcement of the first award. The panel’s subsequent | ^resolution of the various lease-related issues do not implicate the Risk Fee Statute or Goodrich’s liability for well completion costs under that statute.
Contrary to Goodrich’s assertion, our reading of the two awards does not support its argument that the second award violated La. Civil Code art. 3131 because it modified the result of the first award. Indeed, we reiterate Goodrich’s concession that the two results could have been reached without internal contradiction if the disputes had been addressed in a single arbitration hearing. Nevertheless, even if we were in doubt as to the meaning of the two awards we would be constrained to reverse the district court and confirm the second award. On this point, we, again, reiterate the law’s strong *210 presumption in favor of the validity of arbitration awards. Dicorte, 08-0249, p. 3, 993 So.2d at 801. Just as we are instructed to resolve the scope of an arbitration clause in favor of arbitrability, we must also resolve questions regarding the validity of an arbitration award in favor of confirmation. See Bolden, 10-940, pp. 10-11, 60 So.3d at 686; and D & B Framing, Inc. v. Harris Builders, L.L.C., 10-0591, p. 3, 47 So.3d 634, 636 (La.App. 4 Cir.2010). Accordingly, any doubt about the validity of an award should be resolved in favor of the award’s confirmation. See Dicorte, 08-0249, p. 3, 993 So.2d at 801. The district judge, thus, erred when it vacated the December 19 award after concluding that it altered the terms of the June 27 award.
D
One argument that Goodrich tellingly does not make is that basic standards of fundamental fairness and due process were not met in the second arbitration | ^proceeding. See Haase, 98-2967, p. 6, 738 So.2d at 156, n. 2. And we have found that all the issues submitted for arbitration were arbitral, that is none of them were reserved for decision in a forum other than arbitration proceedings. See Part II-B, ante. We have already remarked that the arbitrators were lawyers learned in the field of mineral law which governs all of the disputes submitted to their arbitration. They are the persons whom the parties selected as their private judges. Goodrich casts no aspersions on them nor accuses them of corruption, fraud, partiality, misconduct, or misbehavior. See La. R.S. 9:4210 A-C. The arbitrators endeavored to afford the parties that which these parties contracted for: speedy and inexpensive resolution of their disputes before a tribunal of their choice.
We cannot discern that these arbitrators exceeded their authority in undertaking to arbitrate the issues placed before them by Matador. Goodrich has not demonstrated that these issues were beyond the scope of arbitration as contemplated by their general operating agreements or by their specific agreement not to terminate the first arbitration hearing. See Kleinschmidt v. Lanza, 10-0540, p. 8 (La.App. 4 Cir. 9/15/10), 45 So.3d 1165, 1170 (While parties may not be compelled to submit matters to arbitration which were not previously agreed to, there is no prohibition preventing parties from submitting additional matters to the arbitrator).
CONCLUSION
We find that the arbitration proceedings have been fundamentally fair. See Haase, 98-2967, p. 3, 738 So.2d at 154. We are only authorized to vacate anj^arbitration award if it was obtained in violation of due process requirements or for one of the grounds specified in La. R.S. 9:4210. Id. at p. 4, 738 So.2d at 154. The arbitrators were chosen to settle these parties’ disputes and that is what they have done. In discharging their duties as arbitrators, including deciding the follow-up issues in Matador’s favor, they have not exceeded their authority. Goodrich did not carry its burden to show that they did exceed their authority, and the district judge incorrectly vacated and nullified the arbitrators’ contested second decision.
DECREE
The district court’s judgment is reversed insofar as it vacated and annulled the arbitrators’ decision dated December 19, 2012, and we render judgment confirming that decision. We reserve unto MRC Energy Company the right to obtain from the district court under La. R.S. 9:4214 a judgment which can be made executory against Goodrich Petroleum Company. All costs in the district court and this court *211 are taxed to Goodrich Petroleum Company. See La. C.C.P. art. 2164.[6]
REVERSED AND RENDERED.

. Matador Resources Company changed its name to MRC Energy Company after entering agreements with Goodrich, although the change was unrelated to the parties’ relationship.

. Neither Matador’s Executive Summary for the Central Pine Island Prospect, Caddo Parish, Louisiana, nor Goodrich’s Offer to Participate are in the record before us.

. Mr. Minyard dissented with respect to the second and third issues. As we read the majority and dissenting opinions, it does not appear that Mr. Minyard dissented on the issue of whether the panel was empowered to address the issues submitted by Matador.

. The full text of La. R.S. 9:4210:
In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D.Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

. See part IV C, post.

. The purposes of arbitration are thwarted when parties seek judicial review of an arbitration award. See National Tea Co. v. R.R. Richmond, 548 So.2d 930, 933 (La.1989).